**HOLIDAY INNS, INC., Plaintiff,**

v.

**HOLIDAY INN, Defendant,**

v.

**STRAND DEVELOPMENT CORPORATION, Additional, as Defendant on the Counterclaim.**

**Civ. A. No. 70–811.**

United States District Court,
D. South Carolina,
Florence Division.

March 14, 1973.

Julius W. McKay, Columbia, S. C., James L. Kurtz, Washington, D. C., Richard A. Zachar, Chicago, Ill., for plaintiff.

D. Laurence McIntosh, Florence, S. C., Roy C. Hopgood, New York City, James P. Stevens, Loris, S. C., Steve Judlowe, New York City, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER

CHAPMAN, District Judge.

This action is brought by the plaintiff, Holiday Inns, Inc., a Tennessee corporation, and the largest company in the restaurant and lodging business in the United States, hereinafter referred to as "The Chain". The suit is for alleged unfair competition and service mark infringement against the defendant Holiday Inn, a South Carolina corporation which operates a motel and restaurant at Myrtle Beach, South Carolina under the name of Holiday Inn. This defendant has counterclaimed alleging infringement and unfair competition under the common law of South Carolina and false representation and designation of origin by plaintiff under 15 U.S.C. § 1125(a), and seeks cancellation of certain of plaintiff's registrations under 15 U.S.C. § 1119.

The defendant Holiday Inn brought in as additional defendants on the counterclaim Fleming Jensen and Strand Development Corporation (hereinafter referred to as Strand), which is a South Carolina corporation and a franchisee of the Chain. Strand operates motel facilities at Myrtle Beach, South Carolina under the name of HOLIDAY LODGE and HOLIDAY DOWNTOWN. Strand also operates a facility under the name of HOLIDAY INN in the town of North Myrtle Beach, South Carolina. Fleming Jensen is an officer of Strand Corporation.

The counterclaim alleged certain anti-trust violations by the Chain, Strand and Fleming Jensen. However, just prior to beginning the trial, these anti-trust claims were dropped and withdrawn. All claims against Fleming Jensen were also withdrawn.

The plaintiff's basic charges against defendant are:

(a) That defendant intentionally adopted and used a sign designed substantially identical to the registered "great sign" used by the plaintiff.

(b) That defendant adopted and used a mark "YOUR HOST ON THE COAST" and "YOUR HOST WHILE IN MYRTLE BEACH", which are claimed to be substantially identical to the mark registered by the plaintiff: "YOUR HOST FROM COAST TO COAST".

(c) That the usage set forth in items (a) and (b) above are likely to cause confusion, mistake and deception among customers of hotel services in Myrtle Beach, South Carolina area.

(d) That the usages set forth in items (a) and (b) above constitute infringement and acts of unfair competition under the Trademark Act, 15 U.S.C. § 1051 et seq. and the common law of South Carolina.

In reply to defendant's counterclaim the plaintiff raised additional charges of infringement and unfair competition against defendant stemming from defendant's alleged use of signs and other materials which present the name HOLIDAY INN in a script form identical to that used by plaintiff and registered by plaintiff.

The issues raised by defendant Holiday Inn charge the plaintiff and Strand Corporation with trademark and service mark infringement, unfair competition under the South Carolina common law, false representation and false designation of origin under 15 U.S.C. § 1125. These charges are based upon plaintiff and Strand's use of the names and marks HOLIDAY LODGE and HOLIDAY DOWNTOWN in Myrtle Beach, South Carolina, and HOLIDAY INN in

North Myrtle Beach. Defendant also seeks to cancel plaintiff's registration Nos. 592,539 and 592,540 because of alleged false statements made in connection with affidavits filed by the Chain pursuant to 15 U.S.C. § 1065.

This matter was heard before the Court without a jury and the Court has given considerable time to reading the voluminous depositions, considering and examining numerous exhibits, listening to argument of counsel, and reviewing briefs and memoranda of law submitted. Now in accordance with Rule 52, Federal Rules of Civil Procedure, the Court makes the following

## FINDINGS OF FACT

1. The plaintiff Holiday Inns, Inc., hereinafter referred to as the "Chain", is a corporation organized and existing under the laws of the State of Tennessee, having its principal place of business in Memphis, Tennessee. It was founded in 1952 and since that time has grown to the point that it is now the largest factor in the restaurant and lodging business in the United States, and also does a considerable volume of business outside the United States. The plaintiff's principal business is providing restaurant and lodging services operating under the name Holiday Inn. These services are provided either through company owned facilities or facilities franchised by the Chain. At present the Chain has a facility in almost every major city in the United States, including 33 in the State of South Carolina. The Chain presently owns or franchises approximately 1,300 facilities in the United States.

2. The Chain's original concept was to establish a network of motels and restaurants spanning the entire country upon which the traveling public could rely in obtaining satisfactory services. The facilities affiliated with the Chain are readily recognizable, with quality controls exercised by the Chain and many similar services available at all facilities, such as free use of baby cribs, no charge for children under 12 when sleeping in the room with the parent, kennels for pets, acceptance of Gulf Oil credit cards, etc.

3. The Chain had developed and prominently displays on each facility a large sign, generally referred to as the "great sign". This sign is one of the major features by which travelers generally identify a motel as belonging to or affiliated with the Chain. This sign is quite large, but in some cities smaller versions are used in order to comply with local zoning restrictions. The sign has a green background with the name HOLIDAY INN in large distinctive script lettering, a large star at the top and smaller stars by the name HOLIDAY INN, a large orange arrow starting at the bottom of the sign and running in a sort of semi circle with the point indicating the location of the facility. There is always an attraction panel near the bottom of the sign.

4. In addition to the "great sign" most of the Chain facilities prominently display the words HOLIDAY INN in very large lettering in the distinctive script form directly on the side or face of the building.

5. In the promotion of its services the plaintiff also uses certain slogans, one of which is "YOUR HOST FROM COAST TO COAST". The United States Patent Office has registered applicable service marks of the plaintiff as follows:

| MARK | REGISTRA-TION NUMBER | PUBLICA-TION DATE | ISSUE DATE |
|---|---|---|---|
| Holiday Inn | 592,539 | 4/20/54 | 7/13/54 |
| Holiday Inn | 592,540 | 4/20/54 | 4/13/54 |
| Holiday Inn (Great Sign) | 592,541 | 4/20/54 | 4/13/54 |
| Holiday Inn (Great Sign) | 708,521 | | 12/13/60 |
| YOUR HOST FROM COAST TO COAST | 740,362 | 8/21/62 | |

6. Each of the above registrations was lawfully issued, is valid and currently subsisting. The requisite affidavits having been filed and accepted, these registrations have been accorded

an incontestable status pursuant to 15 U.S.C. § 1065.

7. The above registered service marks of plaintiff are well known to the American traveling public. They have been extensively used and advertised in promoting plaintiff's services and the services of its franchisees. Numerous advertisements have appeared in magazines, newspapers, on radio and television and billboards, as well as a house magazine and a directory of member facilities of which more than ten million are printed and distributed each year. To indicate that its service marks are registered, the plaintiff has consistently used the R or "Reg. U.S. Pat. Office" designations in association with its marks.

8. The defendant Holiday Inn was incorporated in 1960. Prior to that time the business had been operated as a partnership or a proprietorship by Mr. and Mrs. George Hendrix. Mr. Hendrix died in 1959 and the following year Mrs. Hendrix incorporated the business and is the major stockholder and the president of the corporation. In 1966 she married William A. Smith, who since 1966 has held the office of vice-president and general manager of the motel known as Holiday Inn located at 1200 North Ocean Boulevard in Myrtle Beach, South Carolina.

9. When Mr. and Mrs. Hendrix began business in 1948 their resort consisted of an eight unit frame structure operating under the name Ocean Front Lodge. This facility was expanded to 20 units in 1949 and the name was changed to Holiday Inn having been derived from the popular movie "White Christmas". This name was presented in block letters until defendant's facility was expanded by the addition of approximately 15 units, which construction was completed in August 1955. At this time a new sign was erected and comprised the words HOLIDAY INN and applied directly to the newly constructed building. The lettering on this sign was in script form substantially identical to the dis-

tinctive script which plaintiff had adopted in 1952 and registered in 1954.

10. The defendant's facility grew over the years to its present 87 units.

11. In the beginning of defendant's business it did very little advertising. It operated a small facility offering rooms and apartments on a European plan without a restaurant. As the additions were made to defendant's facility it began to advertise on two or three billboards in the Myrtle Beach area using the script lettering of Holiday Inn. It also advertised on a limited scale in newspapers in South Carolina, North Carolina and occasionally in other states and certain parts of Canada. Many Canadians vacation at Myrtle Beach in the spring.

12. The plaintiff first learned of defendant's facility in 1956 when a franchisee of plaintiff, who was constructing a motel facility in Myrtle Beach received a letter from defendant's lawyer objecting to the proposed usage of HOLIDAY INN within the Myrtle Beach area. Plaintiff's franchisee obtained permission from plaintiff to operate the facility within the plaintiff's system under the name HOLIDAY LODGE. This facility has been operated continuously since 1956 as a typical member of the plaintiff's system and has been advertised as such. A great sign was erected in front of the facility presenting the words HOLIDAY LODGE in large script lettering above the words HOLIDAY INNS OF AMERICA SYSTEM. In all other respects the great sign was the same as used by the Chain throughout the system. Holiday Lodge is now operated by Strand and still uses the name Holiday Lodge and has been identified as such from its inception in 1956. Defendant has known of this facility since prior to its opening.

13. In 1956 a complaint was filed by Mrs. Smith (then Mrs. Hendrix) and her late husband in the Court of Common Pleas for Horry County seeking to restrain plaintiff's franchisee from using the name Holiday Inn, Holiday

Lodge or anything including the name Holiday in the Myrtle Beach area. This complaint was not answered and the action never pursued. It was eventually stricken from the court's records for lack of prosecution. This removal from the court docket did not occur until 1969, but no action was taken after the original filing of the complaint.

14. In recent years the defendant has placed stars near the words Holiday Inn in script and on one occasion has used a slogan "YOUR HOST ON THE COAST" on postcards distributed to its guests and prospective customers and has also used the slogan "YOUR HOST WHILE IN MYRTLE BEACH" on highway signs which present the words Holiday Inn in plaintiff's script form. The defendant has also used towels, parking lot identification stickers and notices to guests which have the words Holiday Inn ®.

15. In 1968 the defendant's general manager ordered a sign constructed and placed in its parking lot immediately across the street from its facility. He requested the sign maker to design a sign which would resemble, but not exactly duplicate, the plaintiff's "great sign" and delivered to the sign maker one of plaintiff's brochures to use as a guide. This sign is so similar to the "great sign" of plaintiff that Mr. Smith in his testimony could not explain any differences without being furnished with photographs of each sign. When comparing the two photographs the Court can distinguish one from the other, but the signs are so similar that the traveling public would be easily confused and upon seeing defendant's sign would conclude that it was a franchisee of plaintiff or affiliated with it. The colors of the two signs are almost identical. The use of stars, the big arrow, the attraction panel and the script of Holiday Inn are so similar that the Court can only conclude that defendant erected this sign with the intent and purpose of infringing the rights of the plaintiff and unfairly competing with it.

16. Mr. Smith testified that he showed the plans of the sign to his attorney before it was constructed and that it received the attorney's approval. This attorney is now deceased and the Court can only conclude that he did not receive all of the facts in the matter or else he was not overly familiar with trademark law. Regardless of the advice given by the attorney, such an obvious act of infringement by the defendant could not be justified or excused by a statement that it was made upon advice of counsel.

17. In 1969 Strand began construction of a motel facility franchised by the Chain in Myrtle Beach and another in North Myrtle Beach, which is a separate community located approximately 15 miles north of Myrtle Beach, South Carolina. The facility in Myrtle Beach is now open and operates under the name of HOLIDAY DOWNTOWN and the facility in North Myrtle Beach under the name HOLIDAY INN NORTH MYRTLE BEACH. The "great sign" was erected on the premises of both of these facilities and the facility in Myrtle Beach does not use the word "Inn" but instead used the words HOLIDAY DOWNTOWN in large script on the "great sign". These facilities have been in operation since 1970 and make use of numerous items inside the premises such as towels, brochures, wastebaskets, stationery, shoeshine cloths, bags, etc. which have imprinted thereon the various marks of plaintiff, including HOLIDAY INN ®.

18. Within the city limits of Myrtle Beach only defendant's resort facility is advertised by means of road signs and billboards under the name Holiday Inn. In the telephone directory, the various Strand facilities are listed by their respective names and are indented under the name Holiday Inns of America. The defendant facility is listed under the name Holiday Inn.

19. The plaintiff maintains a nationwide registration system known as Holidex, which is connected with a computer and a significant portion of the reserva-

tions at the Strand facilities are made through this system. Other reservations are made by direct telephone contact with the individual motel and other travelers know of the existence of the Strand facilities through plaintiff's directory.

20. Since the two new Strand facilities began operations the defendant has experienced no significant loss of business. During the summer season it is always full and enjoys approximately 80% repeat business. In the off season a substantial portion of its business is also repeat.

21. There was no evidence that advertising by radio, television, national directory, national magazines and billboards on the part of the plaintiff or Strand had caused any customer confusion between the facilities of Strand and defendant.

22. There was no evidence that usage on the inside of Strand facilities of materials bearing the marks of plaintiff had caused customer confusion between the facilities of Strand and the defendant, and there was no evidence that usage of the "great sign" by Strand facilities has caused customer confusion.

23. Confusion has developed as a result of the similarity of names and there have been mix-ups in bills, letters, reservations, deliveries, etc. Some of this confusion was natural in view of the similarity of names, but the considerable part of it can be charged to the defendant's erection of a sign quite similar to the plaintiff's "great sign".

24. It is clear from the evidence that Strand made every effort to indicate that its facilities were a part of plaintiff's system and there was no evidence to show that the plaintiff or Strand ever attempted to indicate any connection between them and the defendant.

25. In the immediate Myrtle Beach area there are six other lodging facilities using the name Holiday in addition to Holiday Lodge, Holiday Downtown and Holiday Inn. None of these are connected with the plaintiff except the Strand facilities. It is not uncommon for a town much smaller than Myrtle Beach in season to have more than one Holiday Inn facility. The town of Florence, South Carolina, at the time this action was commenced had three Holiday Inns and it is much smaller than Myrtle Beach in the summer season. Some confusion may result in the future because of the similarity of names in the Myrtle Beach area, but this can be kept to a minimum if the defendant will discontinue its efforts to identify itself in the public eye with the plaintiff.

26. The defendant contends that it has exclusive use to the name Holiday Inn in the Myrtle Beach area which it states includes approximately 75 miles of beach running from Georgetown, South Carolina north to Little River. Although Myrtle Beach is the largest city along this "Grand Strand", defendant has introduced no evidence to establish that the words "Holiday Inn" have been associated with its services by any segment of the general public outside the city of Myrtle Beach. North Myrtle Beach is an independent city having its own government, businesses, recreation areas, golf clubs and large expanse of beach. It is separated from Myrtle Beach by a span of unincorporated areas and the motels in Myrtle Beach do not compete directly with those in North Myrtle Beach. While the Court finds that there has been some confusion on the part of travelers in Myrtle Beach, such confusion has not been fostered, intentionally or otherwise by the plaintiff or Strand. In the past confusion has been deliberately and systematically nurtured by the defendant in an effort to profit from the national recognition and good will of the plaintiff. In addition to constructing a sign similar to the "great sign" and adopting large script lettering substantially identical to that of the plaintiff, the defendant has used the ® designation in association with its name on towels, parking stickers, notices to guests and occasionally in advertisements. Defendant contends that due to the tremendous size of the plaintiff

and the name of the defendant many suppliers ship supplies to defendant in response to it orders which have the ® designation thereon, since such suppliers assume that the defendant is affiliated with the Chain. Defendant also contends that it has previously received towels from the local laundry belonging to one of the Strand facilities and containing the ® designation, but that these are infrequent occasions and rarely used by defendant. The Court finds this position of the defendant in conflict with the testimony of plaintiff reply witness Wyatt Thompson, sales manager of a Myrtle Beach radio station, who registered at defendant's facility several days before this case was tried and made photographs of items in his room containing the ® designation. These items included two towels, a sign to guests on the mirror and a parking lot sticker. Although Mr. Smith testified that he had never ordered any supplies with the ®, he had not returned such items to the supplier when received with such designation. The Court cannot accept Mr. Smith's explanation that Mr. Thompson by chance was assigned to the only room of the 85 operated by the defendant where items containing the ® were in use.

27. As previously stated the Strand facilities in Myrtle Beach and North Myrtle Beach use many items inside the facilities containing the name Holiday Inn. These include blankets, sheets, pillowcases, towels, washcloths, wastebaskets, ashtrays, fly swatters, disposable bags, stationeries, etc. Travelers staying at the Strand facilities know that they are dealing with affiliates or franchisees of the Chain, and the use of these various articles inside the facilities do not in any way confuse the traveling public or damage the defendant.

28. The defendant has counterclaimed to cancel plaintiff's registration Nos. 592,539; 592,540 and 592,541, all issued July 13, 1954. These registrations present the words Holiday Inn in script form. The defendant has recently sought to obtain federal registration of its name Holiday Inn and alleges that the plaintiff filed affidavits with the Patent Office which were fraudulent in obtaining incontestable status of the above registrations. Defendant alleges that there was litigation pending in Horry County, South Carolina regarding the use of the name Holiday Inn at the time plaintiff filed its affidavits pursuant to 15 U.S.C. § 1065 of the Lanham Act for the purpose of gaining the incontestable status for the various Holiday Inn registrations. It is the defendant's position that because of the 1956 law suit brought by Mr. and Mrs. George Hendrix against the plaintiff's then Myrtle Beach franchisee, which action was still pending in 1960 when plaintiff filed its affidavits, that such incontestable status was improperly and fraudulently obtained.

Title 15 U.S.C. § 1065 provides, subject to certain exceptions, that the right of a registrant to use its registered mark in commerce for goods or services on or in connection with such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration, shall be incontestable upon filing an affidavit with the Commissioner of Patents, stating:

"(1) There has been no final decision adverse to the registrant's claim of ownership of such mark for such goods or services or to registrant's right to register the same or to keep the same on the register; and (2) there is no proceeding involving said rights pending in the Patent Office or in a court and not finally disposed of . . .".

The suit in Horry County did not involve the "registrant" and only involved the right of plaintiff's franchisee to use the name Holiday Inn in the Myrtle Beach area. It did not involve plaintiff's right to register its marks or plaintiff's right to maintain the same on the register. This suit had never been defended or pursued by the parties and in 1960 was subject to being stricken from the docket for lack of prosecution under the court rules, although this ac-

tion was not taken for a number of years thereafter. No evidence was presented by the defendant amounting to any fraud on behalf of the plaintiff in filing the affidavits in connection with the incontestable status and plaintiff's registration Nos. 592,539; 592,540 and 592,541 are properly entitled to the incontestable status.

29. The Court finds that there is no confusion between the name, the facilities and services offered by defendant and by Strand's "HOLIDAY INN TRAV–L–PARK" trailer camp facility. Defendant offers motel and restaurant facilities, while the trailer park caters to the traveling public transporting its own sleeping facilities.

30. The sign constructed by the defendant similar to the "great sign" has now been taken down and the use of the slogan "YOUR HOST ON THE COAST" has not been used by defendant for a number of years.

31. Prior to the taking of testimony in this action all parties advised the Court that they were waiving monetary damages upon their various claims.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this civil action, and venue is properly laid in this district, pursuant to Title 28, U.S.C. § 1338, 15 U.S.C. § 1121 and 28 U.S.C. § 1391(c).

2. Upon review of the evidence the Court is compelled to conclude that the defendant's course of conduct proves it guilty of both unfair competition and service mark infringement against the plaintiff. The elements of these actions are set forth in John Walker & Son, Ltd. v. Bethea, 305 F.Supp. 1302, 1309 (D.C.S.C.1969):

"The elements of both actions are decidedly similar and the courts often lump them together and discuss them as one cause of action. However, there is a distinction between the two forms of action. It is often said that the law of trademark infringement is part of and included in the broader law of unfair competition. However, the law of trademarks is governed by federal statutes, while the related law of unfair competition is of common law origins. See Brooks Bros. v. Brooks Clothing of California, Ltd., 60 F.Supp. 442 (S.D.Cal.1945); Scriven v. North, 134 F. 366 (4th Cir. 1904); Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir.1948).

It is clear that the action for unfair competition does embrace the law of trademark infringement and extend beyond it. Trademark infringement is a statutory action provided for under the Lanham Act (or Trademark Act, 15 U.S.C. § 1051 et seq.), while unfair competition is a somewhat more comprehensive field, developed under the common law. Being an equitable action developed by case law the court has a great deal more flexibility and may consider a wider number of factors in an unfair competition controversy. Possible confusion in the minds of the buying public is at the core of the law of trademark infringement. Likewise the hallmark of that portion of the law of unfair competition which deals with trademarks is possible confusion as to the source of goods. (Same citations as above). Additionally, factors bearing on unjust enrichment are frequently considered by the courts in unfair competition controversies."

3. The test for trademark infringement, set forth in 15 U.S.C. § 1114(1), is whether the use of the accused copy or colorable imitation of the registered mark is "likely to cause confusion, or to cause mistake, or to deceive." The test is to be applied with regard to the effect of the marks on an ordinary purchaser having an indefinite recollection of the mark to which he has been exposed on a previous occasion. Standard Oil Co. (Kentucky) v. Humble Oil & Refining Co., 363 F.2d 945 (5th Cir.1966); Dwight S. Williams Co., Inc. v. Lykens Hosiery Mills, Inc., 233 F.2d 398 (4th Cir.1956). A side-by-side anal-

ysis of the marks is not the proper test. Sterling Drug, Inc. v. Lincoln Laboratories, Inc., 322 F.2d 968 (7th Cir. 1963).

As found above, the sign erected by the defendant in 1968 is substantially identical to the plaintiff's "great sign" and although differences are obvious when pictures of the two signs are compared side by side, the effect of the defendant's sign was obvious and was likely to cause confusion, mistake or to deceive the public. Not even the general manager of the defendant could explain differences in the two signs without having pictures of them before him.

4. The script form in which defendant presents its name Holiday Inn is substantially identical to the distinctive script used by plaintiff and shown in its various registrations for Holiday Inn. Although there may be slight differences in the location of the stars, the overall effect is such as is likely to cause confusion, mistake and to deceive the public.

5. Defendant's slogan, "YOUR HOST ON THE COAST" and "YOUR HOST WHILE AT MYRTLE BEACH" differ from the plaintiff's slogan, "YOUR HOST FROM COAST TO COAST", and if these slogans alone were the basis of the plaintiff's complaint, this Court would not find them to be an infringement. However, when considered with the other acts of the defendant, beginning with the adoption of the script in 1956 and progressively continuing through the erection of the substantially identical sign in 1968, the Court must conclude that the use of these slogans by the defendant was an effort to trade upon the good will of the plaintiff and represent an infringement of its protected mark, "YOUR HOST FROM COAST TO COAST".

6. Although intent is not a necessary element of trademark infringement, there can be no question of defendant's intent to infringe upon the plaintiff's marks. The defendant's president admitted that defendant did not begin to use the distinctive script in writing its name until after she knew of the plaintiff and after the record shows that the plaintiff had registered this script. The Court cannot believe that the defendant accidentally or innocently chanced upon the same style script as that used by the plaintiff or that it adopted its slogan without hoping to benefit from the recognition factor already developed by the plaintiff in a similar slogan. The burden of a proper explanation of defendant's action is on the defendant and no suitable explanation was given at the trial. The defendant's contention that the imitation of the plaintiff's "great sign" was intended only as a directional sign and was located across the street from the defendant's motel and restaurant carries no weight and represents no excuse or explanation. The defendant's actions speak so loudly that the Court must strain to hear the feeble explanations.

7. The plaintiff's marks are famous throughout the United States and are becoming well known in many other countries. Great effort and expenditure of funds by the plaintiff have not only built up its successful business but have created in the mind of the public strong recognition of its name and service marks. The script, the name, the "great sign" and the slogans of plaintiff have individually and in combination acquired a strong secondary meaning and suggest the plaintiff's services to the general public. These property rights of the plaintiff are entitled to broad protection. Tampa Cigar Company, Inc. v. John Walker & Sons Ltd., 222 F.2d 460 (5th Cir. 1955).

8. The infringements of the defendant have been willful and deliberate and represent unfair competition and an effort on the part of the defendant to identify with and trade upon the plaintiff's good will.

9. The defendant contends that the plaintiff has known of defendant's use of the script since it was first used by defendant more than 15 years ago, and that the plaintiff through its delay

in moving to protect the script style of its name is barred from asserting an infringement. Under different circumstances the Court might follow defendant's argument on this point, but the infringing by the defendant upon the plaintiff began with the use of the script and increased and expanded over the years until the erection of its sign in 1968, which apparently brought about this law suit. The elements of estoppel are not present in this case and simple laches or delay is not a sufficient defense. Rothman et al. v. Greyhound Corp., 175 F.2d 893 (4th Cir. 1949). See also Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888).

"The intentional use of another's trademark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent; and the wrong is a continuing one, demanding restraint by judicial interposition when properly invoked . . . . Where consent by the owner to the use of his trademark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license'. Duer, J. Amoskeag Mfg. Co. v. Spear, 2 Sandf. (N.Y. 599 . . .)."

The Fourth Circuit applied this rule in Rothman v. Greyhound Corp., supra, where the infringer had expanded its business over the years although the plaintiff knew of the infringing use and expansion:

" . . . We agree with the conclusion of the District Judge that under the circumstances the plaintiff, which seeks no recovery for past infringement, did not forfeit the right to prohibit the continued misappropriation of its property in the future. It is settled that the mere delay in seeking relief is no bar to an injunction when the infringer has had knowledge of the fact that he is infringing and has

deliberately set out to capitalize on the good will of the owner . . . .. Indeed it has been held that mere delay will not forfeit the right to injunction whether the infringer had been innocent or fraudulent, for the misuse of the owner's property is the same in either case and the infringer must show good reason why he should not be stopped."

10. The defendant has asserted and this Court finds that it is the prior user of the name Holiday Inn in Myrtle Beach South Carolina. This fact does not excuse the defendant from its course of conduct in infringing upon the plaintiff's trademarks. The acts of infringement and unfair competition by the defendant constitute unclean hands which cause a court of equity to hesitate in rushing to its relief from alleged acts of infringement and unfair competition on the part of the plaintiff and/or Strand. The defendant is entitled to continue the use of the name Holiday Inn within the city limits of Myrtle Beach, South Carolina, but this Court will not prevent the plaintiff and/or Strand from operating its facilities now known as Holiday Lodge and Holiday Downtown in Myrtle Beach or Holiday Inn North Myrtle Beach or Holiday Inn Trav-L-Park under the names they are presently using, and it will not prevent Strand from continuing to use the normal articles of personal property, such as: sheets, towels, pillowcases, blankets, etc. bearing the name Holiday Inn, since these articles, which are used inside facilities and not seen by the traveling public, prior to deciding to register at such facilities, do not add to the existing confusion.

11. In the present case, the plaintiff's wrong, if any, is delay, while the defendant's wrong is intentional deception and use of plaintiff's marks to the detriment of the plaintiff and the confusion of the public. The Court has the responsibility of protecting the public from such confusion, mistake or deception. Stahly, Inc. v. M. H. Jacobs Co., 183 F.2d 914 (7th Cir. 1950); Esso, Inc.

v. Standard Oil Co., 98 F.2d 1 (8th Cir. 1938).

In Manhattan Medicine Co. v. Wood et al., 108 U.S. 218, 2 S.Ct. 436, 27 L.Ed. 706 (1883) Supreme Court stated:

". . . A court of equity will extend no aid to sustain a claim to a trademark of an article which is put forth with a misrepresentation to the public as to the manufacturer of the article, and as to the place where it is manufactured, both of which particulars were originally circumstances to guide the purchaser of the medicine."

At page 227, 2 S.Ct. at page 442:

"Those who come into a court of equity, seeking equity, must come with pure hands and a pure conscience. If they claim relief against the frauds of others, they must themselves be free from the imputation. If the sales made by the plaintiff and his firm are affected, or sought to be, by misrepresentation and falsehood, they cannot be listened to when they complain that, by the fraudulent rivalry of others, their own fraudulent profits are diminished. An exclusive privilege for deceiving the public is assuredly not one that a court of equity can be required to aid or sanction. To do so would be to forfeit its name and character."

The same rule is stated at Section 749 of the Restatement of Torts:

"One who in his trademark or trade name or in his marketing methods habitually makes misrepresentations about himself or his goods, services or business on matters of substantial importance to prospective purchasers is barred, wholly or partially, from relief against another who would otherwise be liable to him under the rules stated in §§ 711–743 for trade practices relating to such goods, services or business.

Comment:

a. Rationale. One is not entitled to legal protection in the operation of a scheme to deceive prospective purchasers. The rule is based on the demerit of the plaintiff's conduct rather than on the merit of the defendant's conduct. Frequently the conduct of both is equally unmeritorious. It is then deemed wiser to leave the parties to their competitive struggle rather than to interfere for the purpose of enabling one to continue his deceitful conduct without the disadvantage of deceitful competition from the other. Denial of relief to one who seeks to deceive prospective purchasers may be a powerful deterrent to such deceit."

12. While the Court might be justified in leaving the parties to their competitive struggle in the town of Myrtle Beach with each using the name Holiday Inn, the rights of the traveling public require the Court to resist the temptation and alleviate some of the confusion by requiring the Strand facilities to continue operating under their present names and allowing the defendant to continue using its name, but restraining it from using the distinctive script writing of Holiday Inn on the outside of its building or on billboards or other advertising. The defendant's rights to use the name Holiday Inn are limited to such rights established prior to the date of publication of plaintiff's registered mark, namely August 20, 1954. The defendant made no showing that its name had obtained secondary meaning outside the City of Myrtle Beach prior to August 20, 1954. Burger King of Florida, Inc. v. Hoots, 403 F.2d 904, 908 (7th Cir. 1968) stated:

". . . Congress intended the Lanham Act to afford nation-wide protection to federally registered marks, and that once the certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant."

13. The defendant charged the plaintiff with false representations and false designation as to the origin by plaintiff of its services. In order to prevail defendant must show that a statement in the form of words or symbols is used in connection with plaintiff's services to indicate falsely that the services originate

with the defendant. See Bernard Food Industries, Inc. v. The Dietene Co., 415 F.2d 1279 (7th Cir. 1969). Defendant has failed to show any such acts by plaintiff.

■ Plaintiff has not violated 15 U.S.C. 1125(a) because it has not made any statements either in advertising or in discussion with potential customers that the plaintiff is licensed by defendant, owned by defendant, has any connection with the defendant and no reference has been made to the defendant in any way. The statements by the plaintiff's facilities in Myrtle Beach, which indicate their association with the Chain, are in avoidance of the prohibition of 15 U.S.C. 1125(a).

14. Just prior to the trial the defendant withdrew its antitrust claims with prejudice. At that time the plaintiff and Strand moved for attorney's fees and costs reasonably connected with defending these claims, contending that such antitrust claims were without merit and were asserted solely for the purpose of harassment. Although defendant developed little evidence to support the antitrust charges in its counterclaims, this Court cannot find that they were wholly without merit and therefore this motion by the plaintiff and Strand is denied.

15. Following the conclusion of the trial the defendant moved to submit additional testimony and supplement the record in response to certain testimony given by Wyatt Thompson regarding towels and other articles found in defendant's facility with Holiday Inn ® designation on them. The Court necessarily had to read the affidavits and view the photographs submitted in order to rule upon this motion. Since this case was tried without a jury, the Court has considered the supplements to the record, but has given them little weight.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

1. The defendant, its officers, agents, servants, employees and attorneys and all those persons in active concert or participation therewith, who receive actual notice hereof, are hereby perpetually enjoined and restrained from:

(a) Using either directly or indirectly a script identical to or any colorable imitation of plaintiff's script Holiday Inn on the outside of its building, on any billboards or on any advertising material.

(b) Using directly or indirectly its version of plaintiff's "great sign" or any colorable limitation thereof.

(c) Using directly or indirectly the slogan "YOUR HOST WHILE AT MYRTLE BEACH" or "YOUR HOST ON THE COAST" or any colorable imitation thereof.

(d) Using directly or indirectly any sign, script, slogan or star design, color combination or other indicia of plaintiff that suggests or tends to suggest a connection with the plaintiff.

(e) Using directly or indirectly any indication that the defendant name is registered in the United States Patent Office.

(f) Directly or indirectly infringing United States Patent Office registered numbers 592,535; 592,540; 592,541; 708,521 and 740,362.

(g) Directly or indirectly committing any act divesting or attempting to divest the plaintiff of the good will it has in its registered marks or any act which encroaches upon the good will that the plaintiff has acquired in its registered marks.

2. The defendant shall have ninety (90) days from the date of this order to comply with this injunction as set forth above and defendant's attorney within such time shall submit to the Court evidence of compliance.

3. Since plaintiff's registrations were properly filed and issued and the plaintiff has filed the required affidavit under 15 U.S.C. § 1065, defendant's third counterclaim seeking to cancel plaintiff's registration Nos. 592,539; 592,540 and 592,541 is dismissed.

4. The defendant has the right to continue using the name Holiday Inn within the town of Myrtle Beach, South

Carolina, and in order to protect the public from unnecessary confusion the Court finds that the defendant Strand must continue to operate its Myrtle Beach, South Carolina facilities under the name of Holiday Lodge and Holiday Downtown, however, it may continue to operate its North Myrtle Beach, South Carolina facility under the name of Holiday Inn and plaintiff may continue to operate Holiday Inn Trav-L-Park under its existing name. Strand may continue to use Holiday Inn and Holiday Inn ® on towels, sheets, blankets, etc. and other items used inside the Myrtle Beach, South Carolina facilities.

5. The defendant's counterclaim No. 3 for infringement and unfair competition under the common law of South Carolina and for false representation and false designation of origin under 15 U.S.C. § 1125 is dismissed.

6. Plaintiff's motion for attorney's fees and costs because of defendant's dismissal of its antitrust claims, allegedly brought without merit, is dismissed.

7. Each party shall bear its attorney's fees and plaintiff is awarded the cost of this action.

And it is so ordered.