**HOLIDAY INNS, INC., Appellee,**

v.

**HOLIDAY INN, Appellant,**

v.

**STRAND DEVELOPMENT CORPORATION,**
**Defendant.**

**No. 79–1761.**

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1980.

Decided April 3, 1981.

Rehearing Denied May 14, 1981.

Paul T. Meiklejohn, New York City (Roy C. Hopgood, Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, D. Laurence McIntosh, Wright, Scott, Blackwell & Powers, Florence, S. C., on brief), for appellant.

James L. Kurtz, Washington, D. C. (Richard A. Zachar, Pope, Ballard, Shepard & Fowle, Chicago, Ill., Julius W. McKay, McKay, Sherrill, Walker & Townsend, Columbia, S. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, PHILLIPS, Circuit Judge and HOFFMAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

ALBERT V. BRYAN, Senior Circuit Judge:

This appeal is from the Federal District Court of South Carolina's denial of the motion by defendant Holiday Inn (the Local), a motel-restaurant in Myrtle Beach, South Carolina, for relaxation of an injunction the Court had granted in 1973 to Holiday Inns, Inc. (the Chain), a national and international operation in the same business with its name duly registered under 15 U.S.C. § 1111.[1] The injunction prohibited the Local from indicating that its name HOLIDAY INN was registered by the U. S. Patent Office.[2] Specifically it proscribed the Local's usage of the symbol ® in connection with its insignia. The order on appeal reaffirmed the injunction and declared that the subsequent acquisition by the Local of a limited registration from the Court of Customs and Patent Appeals in 1976, did not warrant the modification. Maintaining the continued efficacy of the injunction, we refuse to overrule the trial judge's order denying the motion.[3]

For decision upon the District Court's refusal to relax its injunction, our course is charted by Mr. Justice Cardozo's cautions in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1933):

There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. *The injunction, whether right or wrong, is not subject to impeachment* in its application to the conditions that existed at its making. . . . The inquiry for us is whether the changes are *so important that dangers, once substantial, have become attenuated to a shadow.* No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression.

. . . . .

*Id.* at 119, 52 S.Ct. at 464 (accents added).

The words are an immediate reminder that we are not to question the right or wrong of the issuance of the injunction decreeing that:

Defendant [Holiday Inn], its officers agents, servants, employees and attorneys and all those persons in active concert or participation therewith, who receive actual notice hereof, are hereby perpetually enjoined and restrained from:

\* \* \* \* \* \*

(e) Using directly or indirectly any indication that the defendant's name is registered in the United States Patent Office.[4]

364 F.Supp. at 786.

To begin with, incontrovertibly the injunction was violated whenever the Local used the symbol ® in connection with its name in advertisements, publications or elsewhere. Of course, this litigation is not confined to the use of the ® just in itself but, rather, embraces also the significance accorded the symbol by statute, i. e., it is the equivalent of the words "Registered in U.S. Patent and Trademark Office" or

---

1. 15 U.S.C. § 1111:

    [A] registrant of a mark registered in the Patent Office, may give notice that his mark is registered by displaying with the mark as used the words "Registered in U.S. Patent Office" or "Reg. U.S. Pat. Off." or the letter R enclosed with a circle, thus ®; and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration. . . .

2. *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312 (C.C.P.A.1976).

3. The issuance of the injunction originally by the District Court was reported as *Holiday Inns, Inc. v. Holiday Inn*, 364 F.Supp. 775 (D.S. C.1973). It was affirmed by this court, 498 F.2d 1397 (1974) (unpublished opinion), on the findings of the District Court. The present appeal is solely upon the denial of modification by the District Court for the reasons stated in its order, *Holiday Inns, Inc. v. Holiday Inn*, No. 70–811 (D.S.C. Oct. 24, 1979).

4. The right of the Local to continue in the use of the name Holiday Inn within the town of Myrtle Beach was not questioned.

"Reg. U.S. Pat. & Tm. Off.," 15 U.S.C. § 1111, *supra* note 1 (text quoted). Nor is there any question of the *power* of this court to continue the exclusivity preserved by the District Court. The single inquiry is whether the change now sought is warranted by the evidence. There is no basis for assuming that the Court of Customs and Patent Appeals' award of concurrent registration of the Local's trademark lends any force of law tempering or modulating the injunction; that award does not *ex proprio vigore* override in any degree the District Court's injunction.

Returning to the question of this court's abatement or modification of the injunction, our first ground for refutation of appellant's motion rests on the premise of Justice Cardozo: the decree is "not subject to impeachment in its application to the *conditions that existed at its making* . . ." 286 U.S. at 119, 52 S.Ct. at 464 (accent added). Justification for the injunction was laid, in the appeal of it to this court, "upon the District Court's findings of fact." 498 F.2d 1397 (1974) (unpublished opinion). No longer open to "impeachment" or to vacation when, as here, they are not assertedly erroneous, Rule 52, Fed.R.Civ.P., the following findings accurately reflect the "conditions" before, and as of, March 14, 1973 when the injunction issued.

1. Holiday Inns, Inc. (the Chain) was founded in 1952 in Memphis, Tennessee and since that time has become the largest factor in the restaurant and lodging business in the United States. Permanent displays were developed and placed on each facility, including the one at Myrtle Beach. One was the "great sign," having a green background with HOLIDAY INN in distinctive script lettering, a large star at the top, and an orange arrow running from the top to the bottom pointing to the location of the restaurant. In addition, the name is printed in large lettering in script on the side or face of the building. Its slogan was "your host from coast to coast."

2. The United States Patent Office registered the Chain's service marks beginning in 1954. They have been well known to the American traveling public. Numerous advertisements, appearing in magazines and newspapers as well as on radio, television and billboards, embody the symbol ® or the words, "Reg. U.S. Pat. Office."

3. The Local was incorporated in 1960, having prior thereto operated as a partnership or proprietorship. In 1948 it began business under the name of Ocean Front Lodge, consisting of eight frame structures. In August 1955, a new sign was erected bearing the words HOLIDAY INN. The lettering was in script and materially identical to that of the Chain's, which had been adopted in 1952 and, as mentioned, registered in 1954. In recent years the Local has placed stars near the words HOLIDAY INN. It has also distributed towels, parking lot identification stickers and notices to guests bearing the insignia "HOLIDAY INN ®."

4. In 1968 the Local erected a sign in its parking lot across the street from its facility. The manager of the Local requested the sign maker to provide a sign which would resemble, but not exactly duplicate, the plaintiff's "great sign." He was given one of the Chain's brochures to copy. The production so resembled the "great sign" of the Chain that the manager in his testimony could not describe any differences between the Local's sign and the Chain's without first seeing photographs of them.

When comparing the two photographs the Court can distinguish one from the other, but the signs are so similar that the traveling public would be easily confused and upon seeing defendant's sign would conclude that it was a franchise of plaintiff or affiliated with it. The colors of the two signs are almost identical. The use of stars, the big arrow, the attraction panel and the script of Holiday Inn are so similar that the Court *can only conclude that defendant erected this sign with the intent and purpose of infringing the rights of the plaintiff and unfairly competing* with it.

\*     \*     \*     \*     \*     \*

In the past confusion has been deliberately and systematically nurtured by the *de-*

*fendant* [the Local] in an *effort to profit from the national recognition and good will* of the plaintiff [the Chain].

· \* \* \* \* \* \*

[Again,] [in] the present case, the [Chain's] wrong, if any, is delay, while the [Local's] wrong is intentional deception and use of the [Chain's] marks to the detriment of the [Chain] and the confusion of the public.

364 F.Supp. at 779–80, 784 (accents added).

The foregoing numbered sections are the unassailable findings of the District Court (repeated in direct quotation or, for brevity, in substance) upon which it issued the injunction. The findings are essential to the pending issue for *they foretell why the injunction should not be modified.*

The Local's behavior in the past predicts what its conduct may, with reason, be expected in the future if the Chain's trademarks are stripped of their potency by the duplication. Clearly, it will allow the Local to "identify with and trade upon the [Chain's] good will," to quote the language of the trial judge. *Id.* at 783.

To repeat, appellant's motion does not meet Justice Cardozo's measure of justification for "changing" the injunction. 286 U.S. at 119, 52 S.Ct. at 464. Truth is the Local's misconduct evinces no hint of cessation or dilution. On the contrary, it has never lessened in its constancy. Amazing, indeed, is the failure of the Local to give evidence of any diminution in its imitating of the Chain's presentations.

In his findings precedent to refusal of the modification, the District Judge squarely refutes the contention that the injunction, unmodified, deprived the Local of economic benefits to the point of "oppression" as enunciated by Justice Cardozo. *Id.* at 119, 52 S.Ct. at 464. The pertinent parts of the trial court's findings are these:

After careful review of defendant's memorandum and supplemental memorandum in support of its present motion, the Court can see little, if any practical benefit to be derived by the defendant by use of ® in the restricted area of Myrtle Beach, South Carolina. In the original Order this Court found that most of the confusion in Myrtle Beach was caused by efforts of the defendant Holiday Inn (a South Carolina corporation with one motel at Myrtle Beach) to identify itself with the plaintiff Holiday Inns, Inc. (the national chain). In that Order it was found that the defendant's summer season is always full and it enjoys approximately 80% repeat business, which had not suffered because of the construction and operation of motels in the Myrtle Beach area affiliated with the plaintiff.

*Holiday Inns, Inc. v. Holiday Inn,* No. 70–811 (D.S.C., Oct. 24, 1979) (order denying motion. to modify injunction).

The closely reasoned conclusions of the District Court will be

Affirmed.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:

Mindful that we review a ruling committed to trial court discretion, and that the discretion was here exercised by an able judge carefully informed in the matter, I would nevertheless reverse. In my view the unique change in legal circumstances upon which the motion to modify the injunction was based could not properly be ignored in the exercise of a sound judicial discretion. I think it compelled granting the narrow relief from the comprehensive injunction that the Local Inn sought.

I

The unique quality of the change in circumstance can only be appreciated by putting the motion to modify in full procedural and historical context. The critical facts are these. From the late 1960's to the time of the ruling under review these parties had been embroiled in controversy spawned by the use of identical Holiday Inn service names. The Local Inn—and this is a fact not to be forgotten—was the first user, having operated a local motel and restaurant in Myrtle Beach, South Carolina, under the style Holiday Inn since 1949. The Chain was only founded in 1952 but has

since expanded to its present status as a major national and international operator of motels, restaurants and related facilities under the same service name. In 1954, 1960 and 1962 the Chain registered with the United States Patent Office a number of service marks and slogans for use in promoting its operation. As will later be developed, the Local Inn did not seek registration of any mark until 1970, and only obtained a concurrent use registration in 1976.

Direct conflict between the parties began around 1956 when the Chain first franchised a facility in Myrtle Beach. Since then the controversy has proceeded in and out of court. From the outset the Local Inn baldy and, as it developed, illegally sought to capitalize on the Chain's mounting reputation by near duplications of its service mark signs and slogans. In the meantime, the Chain expanded its operations in the Myrtle Beach area while seeking in various ways to fend off the Local Inn's damaging competitive maneuvers. Eventually, inevitably, litigation ensued.

In 1970 the Local Inn, which had not until then registered any service mark, began a concurrent use proceeding in the Patent and Trademark Office, seeking registration of its distinctive Holiday Inn service mark for concurrent use in the Myrtle Beach area. While this proceeding was pending, the Chain commenced the instant action against the Local Inn in United States District Court, alleging unfair competition and service mark infringement. The concurrent use proceeding in the Patent Office was suspended during the pendency of the unfair competition and infringement action which then proceeded to final judgment in 1973. This 1973 judgment granted the permanent injunction whose modification is here in issue, based upon findings and conclusions that the Local Inn had engaged in specific acts of unfair competition and service mark infringement. The injunctive decree tracked in its specific prohibitions the specific acts of unfair competition and infringement alleged by the Chain and determined by the court to have been established by the evidence: using the registered script

Holiday Inn mark; using the Chain's registered "great sign"; using any slogans or symbols suggestive by their similarity to the Chain's registered ones of a connection with the Chain. Also specifically prohibited was the use here in issue of "any indication that the [Local Inn's] name is registered in the United States Patent Office." Finally, and most importantly, the decree authorized the Local Inn to continue use of a distinctive, noninfringing Holiday Inn service mark within the Town of Myrtle Beach. *Holiday Inns, Inc. v. Holiday Inn*, 364 F.Supp. 775, 786–87 (D.S.C.1973).

Following affirmance of the district court's judgment by this court, 498 F.2d 1397 (4th Cir. 1974), the concurrent use proceeding in the Patent and Trademark Office was resumed, with the Chain there actively contesting the restricted registration now sought by the Local Inn. In 1976, following appeal from an administrative denial of the registration, the Court of Customs and Patent Appeals reversed. *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312 (C.C.P.A.1976). The Local Inn was awarded a registration for its service mark, restricted in style to plain block letters and in location to Myrtle Beach, in conformity with the restriction on style and location embodied in the 1973 decree.

The restricted registration was granted under section 2(d), of the Lanham Act, 15 U.S.C. § 1052(d), which allows concurrent registration "when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce." The Court of Customs and Patent Appeals held that concurrent registration was proper under section 2(d) provided that the registration contained conditions and limitations corresponding to those contained in the district court judgment. This applied the rule that where a court has previously allowed more than one person to use a mark in commerce, concurrent registration is proper without an additional determination that there is no likelihood of confusion, mistake or deception, but that the registration must contain whatever conditions and limitations

were imposed by the prior judgment and may not be unrestricted. 534 F.2d at 318.

It was with this restricted registration of its service mark that the Local Inn returned to the district court seeking a modification of only that part of the broad 1973 injunction that prohibited any direct or indirect indication that its name was registered. Arguing that as an incident to registration, the owner of a trademark or service mark is entitled by section 29 of the Lanham Act, 15 U.S.C. § 1111,[1] to give appropriate notice of registration, the Local Inn sought permission to use the circled R, ®, with its now duly registered service name HOLI-DAY INN. In denying the motion the district court explicitly relied upon its conclusions that there would be little damage resulting from an inability to use the ®, that few practical benefits would result, and that confusion would increase rather than decrease were the local establishment allowed to use the ® with its name. *Holiday Inns, Inc. v. Holiday Inn*, No. 70–811, mem. op. 3–5 (D.S.C. Oct. 24, 1979).

## II

Without questioning the validity of these general conclusions of the district court about the likely practical consequences of granting or withholding the relief sought, I would nevertheless find reversible error in the denial of the motion to modify. In my view, the critical factor that should have controlled decision here did not lie in any practical consequences attending the grant or denial of relief that could fairly be predicted for either of the parties or the public. With the district court, I would assess those consequences—for all interested parties—as essentially insignificant or merely speculative. With those consequences therefore discounted, the critical factor that remained was the Local Inn's intervening acquisition

in a valid, contested proceeding against the Chain of a legal right to use the registration symbol in conjunction with its noninfringing service mark—a right that it did not have when the 1973 injunction was entered. Both the district court and the majority have erred in my judgment in applying an overly rigid standard for relief that has obscured this factor's controlling significance. To show why requires an analysis of the power whose exercise is at issue.

Analysis must start with the specific authority invoked by the Local Inn in seeking relief from the 1973 injunction. The basic authority is clear enough. Under Fed.R. Civ.P. 60(b)(5) a district court may grant partial or total relief from a permanent injunction if "it is no longer equitable that the judgment should have prospective application." Though codified by rule, this simply expresses the inherent power, not dependent upon rule, possessed by courts of equity to modify or vacate their decrees "as events may shape the need." *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). In the traditional formulation, if the circumstances of law or of fact existing at the time an injunction is issued have changed, then "a sound judicial discretion *may* call for the modification of [its] terms . . . ." *System Federation No. 91 v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961) (emphasis added). The rub of course has come in determining whether a particular change *does* call for modification. This determination is necessarily committed in the first instance to trial court discretion—preferably that of the injunction court, *see id.* at 647, 81 S.Ct. at 371—and the discretion thus committed is necessarily "wide" though "never without limits." *Id.* at 648, 81 S.Ct. at 371. The precise nub of the rub has been in devising a standard by which the discretion—wide but not unlimited—

---

1. 15 U.S.C. § 1111 provides:

   Notwithstanding the provisions of section 1072 of this title, a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark as used the words "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off."

   or the letter R enclosed within a circle, thus ®; and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration.

may be guided in the trial court and reviewed on appeal.

Justice Cardozo's famous formulation in *United States v. Swift*—quoted and extensively relied upon by the majority here as supplying the appropriate standard—has inevitably come to be the starting point in subsequent judicial analysis. Inevitably also—given the authorship—courts have sometimes been tempted to ascribe to its several felicities of phrase—"dangers . . . attenuated to a shadow," "hardship so extreme and unexpected," "victims of oppression," "instrument of wrong"—a talismanic significance that, with all deference, I suggest the author of *The Nature of the Judicial Process* would never have claimed for them. If the *Swift & Co.* formulation is given that general significance and treated as embodying cumulative specific tests, it would allow modification only if a party seeking relief from an injunction could demonstrate *both* a lack of any further need for it to achieve the purposes of the litigation *and* hardship resulting from the denial of relief so "extreme" as to constitute "oppression." Admittedly, some courts have seemed so to read *Swift & Co. See SEC v. Thermodynamics, Inc.*, 464 F.2d 457 (10th Cir. 1972); *Humble Oil & Refining Co. v. American Oil Co.*, 405 F.2d 803 (8th Cir. 1969). With all respect for those courts, I do not think that the equity powers whose exercise we review should be considered so generally circumscribed and rigidly ordered.

The *Swift & Co.* formulation must, I think, be read simply as a description of the proper exercise of those powers in the particular context of the case before that Court rather than as a general prescription for their exercise in all cases. In *Swift & Co.* general relief was being sought from the historic anti-trust consent decree involving the big five meat packers. The public stakes in maintenance of the decree were great; the complexity of the economic harm being sustained was equally great and difficult to assess. The case was in consequence a very special one for application of the modification power, and the application made was correspondingly a quite special one. The Supreme Court has since cautioned against overly rigid, general applications of the *Swift & Co.* formulation. *See United States v. United Shoe Machine Co.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968). Judge Friendly has sounded a similar caution, noting that the usual case "involves no such sharp conflict between wrong-doing and right-doing as did *Swift*." *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 418 F.2d 31, 35 (2d Cir. 1969). In this circuit we have, I submit, been properly selective and flexible in our application of the *Swift & Co.* standard, depending upon the nature of the litigation, the injunction at issue and the scope of relief sought. *Compare Tobin v. Alma Mills*, 192 F.2d 133 (4th Cir. 1951) (FLSA injunction dissolved) *with Brooks v. County School Board of Arlington County, Virginia*, 324 F.2d 303 (4th Cir. 1963) (school desegregation decree not dissolved).

Remembering that we are dealing with the exercise of discretionary equity powers, I suggest that *Swift & Co.*'s general teaching—as opposed to its specific application—is merely that harm and continuing need must always be weighed in the balance in deciding whether continued enforcement of any injunctive decree is equitable in the light of specific changed circumstances. *See United States v. Swift & Co.*, 189 F.Supp. 885, 905 (N.D.Ill.1960). The proper test is therefore necessarily a flexible one, greatly dependent upon the particular facts of the case. In another *Swift & Co.* setting fraught with massive public interest in preventing a resumption of massive wrong-doing, the Cardozo formulation might properly be treated as having narrow precedential force. But not every case is a *Swift & Co.*, and this one most assuredly is not.

Stripped to its essentials, the situation presented to the district court here was a much simpler one. The court's comprehensive 1973 injunction had recognized the Local Inn's right—acquired by prior use—to continue a concurrent use, restricted in location and to a noninfringing style, of the shared service name, Holiday Inn. The specific style and locality restrictions on the Local Inn's use of its mark were comple-

mented in the decree by a variety of specific prohibitions against continued acts of adjudicated infringement of the Chain's various registered marks. Also included as a specific prohibition was the Local Inn's indicating that any service mark used by it was registered in the Patent Office. The 1973 judgment had found as fact that the Local Inn had been giving such indications and that this tended to add to the confusion of marks; but this had neither been charged nor was it determined in the litigation to have been a specific act of infringement. It was simply an unauthorized act at the time because the Local Inn then had no registered mark. So far as the record shows, at the time the Local Inn applied in 1979 for modification of the decree it had scrupulously complied for the six years since its entry in 1973 with all its restrictions on the authorized concurrent use of its service mark and with all of the decree's prohibitions, including that against indicating that its mark was registered.[2]

In the interval since the 1973 decree the Local Inn had been awarded the registration of its mark which it had not possessed but was already seeking when the 1973 decree was entered. This award was by a valid judgment of a court with competence to grant it. The judgment had been entered following a contested proceeding in which the Chain was an adversary party and in which the district court infringement action was fully taken into account. The registration awarded was expressly conformed in its restrictions to the restrictions on style and locality embodied in the 1973

decree. The judgment awarding it was subject to appellate review.

In this setting, the district court addressed itself essentially to an assessment of the extent to which denial of the relief sought—lifting of the prohibition against indicating service mark registration—would create actual economic or practical harm to the Local Inn, and of the extent to which granting the relief would practically add to any existing confusion of service marks. With the burden properly imposed upon it, the Local Inn sought to demonstrate both that it would suffer practical harm if it were not given relief and that granting the relief would in fact tend to reduce any existing confusion.

On the harm aspect, the Local Inn pointed to certain procedural benefits flowing from registration that would improve its position in respect of infringers. Specifically, a trade mark registrant has the right to invoke federal jurisdiction, 15 U.S.C. § 1121; the benefit of certain evidentiary presumptions in trademark litigation, 15 U.S.C. § 1115; and most importantly, the benefit of constructive notice which deprives infringers of the innocent appropriation defense, 15 U.S.C. § 1072. These, the Local Inn urged, demonstrated a clear economic value incident to use of its registration, hence clear economic harm to it if the injunction against its use were continued. The district court dismissed this contention on the basis that, in view of the extreme unlikelihood that anyone would now risk infringement of the two Holiday Inn marks

2. In this connection, I do not understand the majority's statement, p. 240, that "the injunction was violated whenever the Local used the symbol ® ..."; nor its implication, p. 242, that the Local Inn could be expected to repeat its specifically prohibited acts of infringement if it were given the narrow relief that it seeks; nor the basis of its statements, slip op. p. 242, that "... [T]he Local's misconduct evinces no hint of cessation or dilution. On the contrary, it has never lessened in its constancy."

I do not find any suggestion in the record that the Local Inn has failed in any way since the injunction was entered in 1973 to obey its specific prohibitions and to observe its specific restrictions on concurrent service mark use, including the prohibition against indicating that

its service mark was registered. So far as the record shows, that latter prohibition has been observed as well after registration as before.

Obedience to an injunction is not in itself reason for granting relief from its terms, see Goldberg v. Ross, 300 F.2d 151 (1st Cir. 1962), but neither is pre-injunction misconduct that ceases with issuance of the injunction a reason for denying relief. It is also true, as the majority emphasizes, that an injunction cannot be impeached under the guise of seeking modification of its terms. United States v. Swift & Co., 286 U.S. at 119, 52 S.Ct. at 464. But the Local Inn is not here seeking in any way to impeach the injunction in its relation to adjudicated pre-injunction misconduct.

in the Town of Myrtle Beach, the potential harm was more theoretical than real.

On the confusion aspect—essentially the question whether the need for continuation of the injunction had been removed—the Local Inn argued that enabling it to use its registration symbol would actually reduce any public confusion resulting from the appearance of both registered and apparently unregistered Holiday Inn marks in the locality. The district court dismissed this as too speculative and ephemeral for acceptance. It concluded instead that the inevitable effect of allowing the Local Inn now to affix an ® to its service mark would be to increase any existing public confusion created by the two marks since by this means they would be made at least that much more similar.

These factual findings as to likely consequences—of practical harm if the relief were denied and of the effect on confusion if it were granted—are not clearly erroneous. For the district court and the majority, they are dispositive as they stand against the Local Inn's request for injunctive relief.

For me they merely reduce the final balancing problem to two simple conflicting considerations that, properly weighed, conclusively demonstrate the inequity of continuing the prohibition. Discounting any significant practical harm from denying the relief or any significant reduction in confusion of service marks from granting it, we are left with the following two considera-tions. On the one hand there is the fact that granting the relief would increase—by the addition of an ® mark to the Local Inn's authorized, noninfringing service mark—any confusion already existing in the public's mind between the two service marks that had now long been in concurrent use. On the other hand is the fact that the right to use that registration symbol in conjunction with the Local Inn's service mark is one generally authorized by federal statute and now specifically established by an intervening, unchallenged federal judicial decision.[3]

When one contemplates that since 1973 the noninfringing service marks had been in constant legally authorized concurrent use in the limited area of the Town of Myrtle Beach, it is inconceivable to me that now merely adding to the Local Inn's distinctive block letter service mark the small symbol ® would increase above a de minimus level any already existing public confusion resulting from the six years of legally approved concurrent use. That was the only reason addressed to the continuing need factor that was presented to the district court. Sufficient to overpower that tenuous threat of added confusion is the simple matter of newly acquired legal right, whether or not accompanied by any objective economic or practical value.[4] *Cf. Coca-Cola Co. v. Standard Bottling Co.*, 138 F.2d 788 (10th Cir. 1943) (injunction against service mark use dissolved in light of intervening decision that adverse party had no exclusive right of use). To deny the relief

**3.** Even if the *Swift & Co.* "attenuated to a shadow" language were rigidly applied as a general test for granting relief from injunctions, I would find it met here. Admittedly, it all depends upon how one defines the "danger" whose attenuation is being assessed. That can only be done by looking to the context and evident purposes of the injunction litigation. Here, looking to that source, the danger was that the Local Inn would continue its *unauthorized* use of the ® as an added element of confusion. By the intervening authorization of its use that danger has been not merely attenuated to a shadow but utterly removed.

**4.** Even if any objective economic·value be discounted—a position to which I concede we are bound by the clearly erroneous standard of review—there remains an intrinsic, subjective value in having the public know of the existence of any legal right that has been in public dispute. This is a value that has not, and could not properly, be discounted by the district court in assessing harm. Ultimately at stake was the right publicly to signal by the registration symbol a fact long since established, but not generally signalled, by the injunction decree itself—that the Local Inn's concurrent use of its service mark was legally authorized. In view of the high likelihood—clearly a matter for judicial notice—that public doubt about the legality of the use might continue, the significant intangible (if no other) value of this right is manifest. So, necessarily, is the significance of the harm resulting from its denial.

sought was in effect to nullify this legal right fairly acquired in the interval for no reason but to avoid a highly speculative, obviously minimal, increase in confusion of service marks already long in concurrent use. In my judgment, under the flexible test of harm and continuing need properly applied to the Local Inn's motion, its request for limited relief could not be denied in the exercise of a sound legal discretion. *See System Federation 91 v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961).

I would reverse and direct a grant of the relief sought.