45 C.C.P.A. (Patents).
**Tj SILBER (Doing Business as Economy Products Co.), Appellant,**

v.

**The BULLSEYE CORPORATION, Appellee.**

**Patent Appeal No. 6332.**

United States Court of Customs and Patent Appeals.

April 23, 1958.

Mason & Graham and Collins Mason, Los Angeles, Cal. (Donald A. Gardiner, James Atkins and Russell L. Law, Washington, D. C., of counsel), for appellant.

Steward & Steward, Roy F. Steward and Merrill F. Steward, New Haven, Conn., for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, acting for the Commissioner, in a concurrent use proceeding under section

2(d) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1052(d), 110 U.S.P.Q. 374. Involved is an application for registration for concurrent use filed August 12, 1950, by appellee, The Bullseye Corporation, hereafter referred to as Bullseye; and an application for unrestricted registration filed August 18, 1950, by appellant, Tj Silber, doing business as Economy Products Co., hereafter referred to as Silber.

Bullseye's trademark "Plasticote" is used as a single word on a cleaning and polishing composition for automobiles and furniture. Silber's mark consists of two words, "Plasti-Cote," and is used with similar merchandise for cleaning and polishing purposes. The marks and the goods of the parties have been considered substantially identical, however, and will be so regarded here.

The Examiner of Interferences rejected both of the applications hereinbefore described on the ground that the respective marks therein defined are merely descriptive of the goods with which the marks are used. New applications were thereafter filed by the parties, and those substituted applications are here in issue. Therein each applicant, in an effort to establish distinctiveness by appropriate evidence of secondary meaning, claims substantially exclusive and continuous use of the mark during the period of five years next preceding the filing date of the application as provided by section 2(f) of the Act of 1946. Bullseye's application acknowledges an exception to such claim, however, in the use of the mark by Silber "from at least November 1, 1949" in the states of Arizona, California and Washington, wherein Silber had obtained a state registration for his mark.

Silber alleges first use of the mark in commerce, which may be lawfully regulated by Congress, on July 1, 1941, while Bullseye alleges first such use on August 1, 1945. Both parties in support of their contentions took testimony by deposition, but neither party cross-examined the witness or witnesses of the other, nor did either party appear when the other party took its testimony.

The Examiner of Interferences and the Assistant Commissioner upon the evidence of record both held that Bullseye had established continuous use of its mark on the goods here involved, by its predecessors and itself, at least as early as 1946, and continuing from that date, in increasing amounts, up to the time when its application herein to register was filed. Those holdings are clearly supported by the record.

Silber, who, as hereinbefore indicated, waived the right to be represented at the taking of testimony on behalf of Bullseye, now objects to the admission thereof on the ground that much of it was elicited by leading questions. That objection can apply only to the weight of the testimony, and, giving such objection full consideration, we find that Bullseye's evidence amply supports a date of use as early as the end of 1946 and continuous use thereafter.

The principal controversy here concerns the credibility of the evidence offered by Silber, who testified, without corroboration, in his own behalf, and offered in evidence a multiplicity of invoices, letters, sales slips and other papers, none of which were identified by any other person. The Examiner of Interferences, in his disposition of the issues presented, among other things, found that neither party had shown substantially exclusive use of its mark during the critical five-year period, and accordingly held that neither was entitled to registration.

The Assistant Commissioner on appeal from that decision extensively reviewed the testimony and exhibits submitted and held that Silber's evidence was of such a nature that it could not be credited; that it established no sales of merchandise under his mark here involved prior to 1952, "which long postdates Bullseye's use"; and that the record submitted by Silber constituted an attempted fraud on the Patent Office. She accordingly affirmed the holding of the Examiner of Interferences that Silber was not entitled

to registration, but reversed his holding as to Bullseye which, she held, was entitled, upon appropriate amendment of its application, to an unrestricted registration of the contested mark.

The record discloses that months after the first rejection of both applications by the examiner on the ground of descriptiveness, and "Responsive to Patent Office Action of September 7, 1951," Silber, by his amendment of February 29, 1952, incorporated in his substituted application all matters touched upon in said Patent Office action, and further remarked that " * * * *The statement under Section 2(f) is now verified, and alleges that the registration is sought in accordance with Section 2(f) of the 1946 Act.*" (Emphasis added.)

It is properly pointed out by Bullseye that in February 1952, when Silber incorporated in his application the statement, under oath, that he had acquired ownership of the mark here in issue "through substantially exclusive and continuous use thereof as a mark by the applicant in commerce among the several states for the five years next preceding the date of the filing [February 29, 1952] of the above-entitled application," Silber actually knew of the substantial use of the Plasticote mark by the Livingston Company, an associate of Bullseye, prior to the filing by Silber of his substituted or amended application.

There is of record in support of that contention a petition filed in the Patent Office by Silber on October 26, 1951, for access to the Bullseye application, in which Silber's attorneys state that Silber had advised them "that he had had considerable past trouble, infringement, correspondence and negotiations with the Bullseye Corporation through its attorneys and agents, seeking rights under your petitioner's trademark in question." Attached to the petition as Exhibit A was a letter to Silber's attorney from Bullseye's attorney stating that Bullseye has authorized its distributor in California to discontinue the use of the Plasticote mark. Exhibit B was a letter to Silber's company from the president of the Livingston Company, inquiring as to the possibility of purchasing Silber's automobile polish business in California. Exhibit D was a letter from Silber's attorney to Lester Tobias, an employee of Bullseye, dated June 27, 1950, stating that "Mr. Silber and I finally discussed the Plasticote trademark *used by your friends on a royalty basis*" (emphasis added), and declining to do business with such friends.

Bullseye also offered the testimony of its president, Francis W. Westerson, to the effect that J. Allan Trankel, as attorney for Silber, wrote letters on July 20, 1949 to two California companies, one in San Francisco and the other in Fresno, charging them with an infringing use and advertising of the mark "Plasticote." Copies of such letters are in evidence.

In view of the foregoing enumerated facts, it is evident that Silber knew of the use of the Plasticote mark by Bullseye or its associates during the five years next preceding Silber's application, and the extent of use indicated by the petition, exhibits and testimony just considered would certainly be "substantial" as that term is ordinarily understood. Accordingly, Silber's affidavit in February 1952 as to substantially exclusive use of the mark by him reflects definitely upon his credibility. Moreover, as pointed out in the decision of the Assistant Commissioner, there are a number of apparent inconsistencies in the evidence presented by Silber which, in our opinion as in her opinion, have not been satisfactorily explained.

 For the reasons given, we are in agreement with the Assistant Commissioner that Silber's evidence is of such a nature that it cannot be accepted as proving substantially exclusive use by him of the trademark here involved prior to 1952, which is long subsequent to the time when Bullseye began continuous use of that mark. Accordingly, the refusal to grant an unrestricted registration to Silber was proper. Acadamy Award Products v. Bulova Watch Company, 2 Cir., 233 F.2d 449, affirming D.C., 129 F. Supp. 780; Van Alstyne & Co. v. Bout-

well Milling & Grain Co., 43 App.D.C. 530; Academy v. Academy Award Products, Inc., 89 U.S.P.Q. 451; Old-Monastery Wine Co., Inc., v. St. Julian Wine Co., 110 U.S.P.Q. 241.

■ It does not necessarily follow, however, that Bullseye should be given the unrestricted registration to which the Assistant Commissioner has held it to be entitled, even if Silber's evidence is disregarded, as we think it must be.

Bullseye, in its application, did not request unrestricted registration and did not make an unqualified allegation of substantially exclusive use of its mark. It admitted a use by Silber "from at least November 1, 1949" in California, Washington, and Arizona, as hereinbefore described, and excluded those states from its request for registration. Moreover, the record shows that, in 1949, Bullseye discontinued the use of its Plasticote mark in California, as the result of complaints by Silber, and replaced it by the mark "ICV". This, in effect, was a concession by Bullseye that Silber's right to use the Plasticote mark in California was superior to its own.

Under such circumstances, and despite the assertion by Bullseye that the above admission and concession on its part were due to a mistake, we are of the opinion that Bullseye cannot properly be accorded a registration of greater scope than that requested in its application as filed. The failure of Silber's evidence to establish any date of use prior to 1952 does not destroy the effect of Bullseye's admissions, express and implied, that Silber had such an interest in the mark "Plasticote" as would preclude Bullseye from obtaining a registration covering California, Washington and Arizona. Apart from the three states last mentioned, the evidence clearly establishes that "Plasticote" has acquired a secondary meaning and has become distinctive of Bullseye's goods in commerce. It follows that Bullseye is entitled to a concurrent registration as requested in its application.

In view of that conclusion, we consider that no useful purpose would be served by the presentation of other undisputed and cumulative facts of record not discussed in the Commissioner's decision, which are likewise adverse to the appellant's case.

Decision has been deferred until this time on the taxing of costs as to certain papers added to the record as the result of a motion by appellee to correct diminution of the record. We find the papers to be relevant and material to the issues presented in the case and the costs incident to including them in the record are accordingly taxed against the appellant.

We hold that appellant Silber is not entitled to any registration of the trademark "Plasti-Cote," and that appellee, The Bullseye Corporation, is entitled only to a concurrent registration as requested in its application here involved. The decision of the Assistant Commissioner is modified to the extent indicated and the case is remanded for further proceedings, consistent with this opinion.

Modified and remanded.

RICH, J., concurs in the result.

WORLEY, Judge (dissenting in part).

I agree with the majority and the concurrent holdings of the Patent Office that appellant is not entitled to registration. However, I am of the opinion registration should also have been refused appellee. My disagreement stems from a different evaluation of the evidence offered by appellant. I concur with the Examiner of Interferences that appellant's evidence establishes use of the involved mark at such times and in a sufficient number of states to preclude a grant to appellee of any registration of that mark, concurrent or otherwise.

I would affirm the decision of the Assistant Commissioner so far as it refuses appellant registration, but reverse so far as it holds appellee entitled to registration.