HOLIDAY INN, Appellant,

v.

HOLIDAY INNS, INC., Appellee.

HOLIDAY INNS, INC., Appellant,

v.

HOLIDAY INN, Appellee.

Patent Appeal Nos. 76–546, 76–547.

United States Court of Customs and Patent Appeals.

May 6, 1976.

Rehearing Denied July 8, 1976.

**314**

Stephen B. Judlowe, Roy C. Hopgood, Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, attys. of record, for appellant, cross-appellee.

James L. Kurtz, Washington, D. C., atty. of record, for appellee, cross-appellant.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

These are cross appeals from a decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB), 188 U.S.P.Q. 471 (1975), in a concurrent use proceeding, No. 350.[1] In No. 76–546, applicant Holiday Inn appeals from the TTAB's refusal to register the word mark HOLIDAY INN to it. In No. 76–547, Holiday Inns, Inc., appeals from the TTAB's imposition of restrictions on its three registrations[2] of "Holiday Inn" in various design forms, hereinafter described. We reverse.

Here involved is litigation between the parties to this proceeding in the United States District Court for the District of South Carolina, Florence Division, *Holiday Inns. Inc. v. Holiday Inn,* 364 F.Supp. 775, 177 U.S.P.Q. 640 (1973), *affirmed on the District Court opinion,* 498 F.2d 1397, 182 U.S.P.Q. 129 (CA4 1974). This concurrent use proceeding was suspended during the pendency of that litigation, and the TTAB rendered its decision after its conclusion. Familiarity with the opinions in the litigation and with the opinion of the TTAB is assumed. The TTAB rested its decision on the facts as found in the Fourth Circuit litigation. We deem them to be controlling here.

Although there are nominally two appeals before us, they are taken from a single decision of the TTAB. Inherently, however, a concurrent use proceeding involves an adjudication of the rights of two parties. This proceeding was commenced by the filing of an application by Holiday Inn (a corporation), appellant and cross-appellee, to register HOLIDAY INN, application serial No. 367,335, filed August 6, 1970,

---

1. Contrary to what may be concluded from *In re Beatrice Foods Co.,* 429 F.2d 466, 57 CCPA 1302, 166 U.S.P.Q. 431 (1970), this case is the *third* concurrent use proceeding to come before this court. The first one was *Silber v. Bullseye Corp.,* 254 F.2d 405, 45 CCPA 906, 117 U.S.P.Q. 358 (1958).

2. Nos. 592,539; 592,540; 592,541, registered July 13, 1954, all for "Motel Services—Namely, Providing Lodgings and Meals in Motels," and all claiming first use Mar. 1, 1952.

as a service mark for "motel services, namely, providing lodgings, refreshments and meals in a motel." The application has always been for a territorially restricted registration. As amended, the restriction is "for the area of repute comprising Myrtle Beach, South Carolina." The application as filed explained that the reason for asking for a restricted registration was applicant's understanding that outside of the named "area of repute" Holiday Inns of America, Inc., or its licensees or franchisees, had been providing motel services under the mark HOLIDAY INN, since 1952 but subsequent to applicant's first use in 1949. Knowledge of the aforesaid registrations to Holiday Inns of America (now Holiday Inns, Inc.) was recited.

The application for the restricted registration was ultimately passed to publication on October 4, 1971, "subject to a Concurrent Use Proceeding with" the aforesaid three registrations. January 20, 1972, the PTO sent out a concurrent use letter and instituted the concurrent use proceeding. February 25, 1972, Holiday Inns, Inc., moved to stay the proceeding in view of the litigation in the federal court in South Carolina, as well as other litigation in a county court in that state. The motion was granted without objection.

In September 1974 the PTO was advised of the outcome of the litigation, and on October 25 the TTAB revived the concurrent use proceeding by issuing an order to show cause why the applicant should not be granted a concurrent use registration as requested and why the three registrations

of Holiday Inns, Inc., "should not be limited so as to exclude the area comprising Myrtle Beach, South Carolina." Holiday Inns, Inc., responded with an extensive memorandum opposing both of the TTAB's suggestions. Applicant filed a response saying it saw no reason why it should not be granted its restricted registration "for what a court of competent jurisdiction has finally determined to be the prior user's * * * lawful right." Interestingly, it said nothing about the restriction proposed for the registrations of Holiday Inns, Inc. Thereafter the TTAB rendered the decision from which this appeal was taken, refusing applicant's registration and restricting the issued registrations.

To avoid confusion, we shall hereinafter refer to Holiday Inn as the "Applicant" and to Holiday Inns, Inc., as the "Chain."

The facts determinative of this appeal which were established, as between the parties, in the aforesaid Fourth Circuit litigation, are the following. Applicant, through its predecessors in business, was the first user of HOLIDAY INN for motel services, its use being solely in connection with its motel in Myrtle Beach, which use began in 1949. Commencing in 1952, the Chain acquired trademark rights in "Holiday Inn" and procured the aforesaid three registrations, each depicting the mark in a distinctive form, as shown below, the drawing of Reg. 592,541 being in the amended form, in accordance with an amendment filed May 27, 1975. That particular registration was referred to in the litigation as the "great sign."

592,539

592,540

## 592,541

The Chain, owning or franchising about 1,300 facilities in the United States, has been adjudged entitled to the exclusive use of these trademarks throughout the United States, and these registrations are presently unrestricted. Applicant's application concedes this, except for Myrtle Beach. As to this area of Applicant's "repute," however, Applicant is under an injunction resulting from the Fourth Circuit litigation which reads:

1. The defendant [Applicant], its officers, agents, servants, employees and attorneys and all those persons in active concert or participation therewith, who receive actual notice hereof, are hereby perpetually enjoined and restrained from:

(a) Using either directly or indirectly a script identical to or any colorable imitation of plaintiff's script Holiday Inn on the outside of its building, on any billboards or on any advertising material.

(b) Using directly or indirectly its version of plaintiff's "great sign" or any colorable imitation thereof.

\* \* \* \* \* \*

(d) Using directly or indirectly any sign, script, slogan or star design, color combination or other indicia of plaintiff that suggests or tends to suggest a connection with the plaintiff.

(e) Using directly or indirectly any indication that the defendant name is registered in the United States Patent Office.

(f) Directly or indirectly infringing United States Patent Office registered numbers 592,535 [592,539]; 593,540 [592,540]; 592,541; 708,521 and 740,362.[3]

(g) Directly or indirectly committing any act divesting or attending [attempting] to divest the plaintiff of the good will it has in its registered marks on [or] any act which encroaches upon the good will that the plaintiff has acquired in its registered marks.[4]

Also relevant here is the following paragraph from the final judgment:

4. The defendant [Applicant] has the right to continue using the name Holiday Inn within the town of Myrtle Beach, South Carolina, and in order to protect the public from unnecessary confusion the court finds that the defendant Strand [a Chain franchisee] must continue to operate its Myrtle Beach, South Carolina facilities under the name of Holiday Lodge and Holiday Downtown, however, it may continue to operate its North Myrtle Beach, South Carolina facility under the name of Holiday Inn and plaintiff [the Chain] may continue to operate Holiday Inn Trav-L-Park under its existing name. Strand may continue to use Holiday Inn and Holiday Inn ® on towels, sheets, blankets, etc., and other items used inside the Myrtle Beach, South Carolina, facilities.

---

3. The last two registrations are not involved in this appeal.

4. This injunction is as it appears in the final judgment of the District Court. The bracketed numbers and words are those used in the court's conclusions of law and were clearly intended.

### Applicant's Right to Registration

The TTAB refused to grant Applicant a restricted registration of the mark HOLIDAY INN because of (a) its belief that § 2(d) "permits the issuance of concurrent registrations only when confusion, mistake, or deception is not likely" and (b) its opinion that, under the factual situation of this case, "the inevitable result is and will be one of confusion * * * ." On point (a), it cited our decision in *In re Beatrice Foods Co.,* 429 F.2d 466, 57 CCPA 1302, 166 U.S. P.Q. 431 (1970).

Upon review of our opinion in *Beatrice,* we note that the case had nothing to do with a situation in which the respective rights of the parties to a concurrent use proceeding had been settled by a court decision. *Beatrice* involved two applicants who had reached agreement on territorial rights, and the problems we had to solve all arose from the refusal of the then Patent Office to recognize the rights agreed upon. What we there said about likelihood of confusion had validity in the situation then before us and still has validity in similar situations; but we were not there discussing a situation like the present one or even that part of the statute which controls here.

More in point on the present fact situation is *Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc.,* 293 F.2d 685, 49 CCPA 730, 130 U.S.P.Q. 412 (1961), *cert. denied,* 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962), wherein, as here, a final court judgment had determined the respective rights of the parties to use marks including "Dunhill." As our opinion points out, it had also been determined by the court that confusion of the public had resulted from concurrent use of "Dunhill" by both parties. Nevertheless, because of an estoppel situation, the New York court had determined that the applicant had a right to continuing use of "Dunhill" notwithstanding the registrant-opposer's rights—

and notwithstanding the possibility of public confusion. In its judgment, which included an injunction, and with a view to *minimizing,* but not necessarily eliminating, confusion, the court spelled out just how the applicant could use "Dunhill" and on what goods. The form was to be DUNHILL TAILORS, both words to be on a line, of the same type, size, and color, and always in capital letters. In the opposition which was before us, we considered the court's determination to be controlling and the applicable statutory law to be that portion of the concurrent use proviso of § 2(d) (15 U.S.C. § 1052(d)) corresponding to the part which now, as revised by the 1962 amendments, reads:

> Concurrent registrations may also be issued by the Commissioner when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce.

Applicant relies on this provision here.

■ The Chain's position throughout this proceeding, which seems to have been adopted by the TTAB, has been that even when courts, after a full trial and review on appeal, have fully settled the rights of parties to a litigation respecting trademark use—taking into account public interest as well as the parties' rights—the Commissioner *cannot* issue a restricted registration without first determining that there is no likelihood of confusion. The Chain also emphasizes the word "may" in the above quotation from § 2(d).

We disagree with the Chain's position. It is clearly contrary to what we did in *Dunhill.* All members of the court deciding that case were fully aware that there had been confusion, was likely to be more, and that the court which adjudicated the applicant's right to use, in imposing conditions on the manner of use, hoped only to minimize, not to eliminate, confusion [5] and, of

---

**5.** The *Dunhill* majority clearly recognized this in the sentence:

> In the instant case we have * * * a close question requiring the inhibitions of the injunction to minimize confusion.

293 F.2d at 692, 49 CCPA at 739, 130 U.S.P.Q. at 418. The two judges who wrote concurring opinions (which are in reality dissents) were fully persuaded there would be confusion.

course, to protect the other party's private rights. Nevertheless we decided that the applicant should have a restricted registration. The only reason we reversed the board's unqualified dismissal of the opposition was that it left the applicant in a position to obtain a registration without any conditions or limitations corresponding to those imposed upon it by the New York court decree fixing the limits on its right to use. *Dunhill,* as the opinion amply shows, was very like the present case in all its major features: the prior litigation between the same parties, the finding of infringement by the applicant and likelihood of public confusion, the injunction with an exception in favor of applicant's right to use but with restrictions. It differed from this case, however, in that the applicant in *Dunhill* was a *subsequent* user whose right to use depended on an estoppel while here Applicant is in an even better position to obtain registration as the *first* to use the mark by several years. Though *Dunhill* was an opposition, as we said in footnote 9 (n. 8 in F.2d and U.S.P.Q.):

> We do not see that it is of any practical significance that the present inter partes proceeding is called an "opposition" when the facts are such as to require a decision on an issue of concurrent registration.

The same is true in reverse.

As for the controlling statutory language of § 2(d), the wording of the section as it was at the time of *Dunhill* will be found in the opinion of Judge Martin in that case. There was language in the proviso similar to that of the present statute about the Commissioner determining "that confusion or mistake or deceit of purchasers is not likely to result from the continued use of said marks," but that did not deter us from approving a restricted registration "when a court has finally determined that more than one person is entitled to use the same or similar marks." In the present statute, as amended in 1962, subsequent to *Dunhill,* it appears to us that it has been made even more clear than it was in the original statute that the sentence referring to court determinations is independent of the opening words of the proviso referring to the

Commissioner's determination that confusion, etc., is "not likely." We do not consider those words to be a limitation on the provision for granting concurrent registrations on the basis of determinations of right to use by courts of competent jurisdiction.

The Chain points to the word "may" in the sentence dealing with court determination and argues that the sentence is merely permissive, allowing the Commissioner to register in the present situation only "if he should determine that the touchstone requirement—no likelihood of confusion—has been fulfilled." We disagree with this construction. Accord, *Avon Shoe Co. v. David Crystal, Inc.,* 279 F.2d 607, 615, 125 U.S.P.Q. 607, 614 (C.A. 2 1960). The word "may" is insufficient to condition the operation of the court determination sentence of § 2(d) on a preliminary finding of no likelihood of confusion by the Commissioner pursuant to the first sentence of the proviso. There are other obvious reasons for using "may." The Trademark Act contains many conditions on registration, other than no likelihood of confusion, which it is the Commissioner's duty to enforce. Courts may very well determine rights to *use* "marks" which are not technically trademarks, which fall into categories denied *registration* by the statute, which may be open to others than the parties to use, and in all cases every applicant to register must comply with all of the procedural requirements of the Patent and Trademark Office as set forth in statute and rules before the Commissioner is compelled to register. "May" is a very appropriate word in view of these considerations. We also note its use in the first sentence of the § 2(d) proviso where the requirement that the Commissioner find confusion, etc., to be "not likely" is found.

As we did in *Dunhill,* and for similar reasons, we find Applicant is entitled to a restricted registration wherein the "conditions and limitations" required by § 2(d) reasonably correspond to the final judgment of the Fourth Circuit court. In paragraph 4, the judgment gives Applicant "the right to continue using the name Holiday Inn within the town of Myrtle Beach, South

Carolina." Applicant's application to register is now so limited. As to the form of the mark, the application presents it in plain typed capital letters which do not violate any part of the judgment. The specimen of facsimile of record in this court, however, appears to be violative of the judgment in that its script resembles that of the marks in the Chain's registrations, and we suggest Applicant be required to submit new specimens conforming to the judgment.

We note, sua sponte, paragraph 1(e) of the judgment, supra, which prohibits Applicant from using "any indication that the defendant name is registered in the United States Patent Office," an appropriate injunction so long as it is not registered. We see no reason why, upon the issuance of a registration, Applicant should not be relieved of that disability, if appropriate action is taken.

For the foregoing and other reasons to be found in our *Dunhill* opinion, the decision of the TTAB refusing registration to Applicant is *reversed.*

### Restriction of the Chain's Registrations

Registrations 592,539, 592,540, and 592,541 are now unrestricted, but the TTAB decision would limit them to exclude Myrtle Beach, South Carolina. This was error. *Nationwide Mutual Insurance Co. v. Securance Service, Inc.,* 147 U.S.P.Q. 258 (TTAB 1965), cited by the board, is not in point. Each of the marks of said registrations is in a particular design form which Applicant is enjoined from using. There is, therefore, no right in anyone who is adverse to the Chain to use those particular marks, even in

Myrtle Beach. The TTAB relied on § 7(b) of the Trademark Act (15 U.S.C. § 1057(b)), particularly the provision that a certificate of registration is prima facie evidence of registrant's "exclusive right to use the mark," in holding that Applicant's "superior right" (in Myrtle Beach) is "inconsistent" with the registrations. We do not agree.

Section 7(b) does not grant a positive *right to use* the registered mark; the Trademark Act does not give to the federal government power to grant positive rights to *use* marks and § 7(b) should not be so read. Under § 7(b), a certificate of registration is no more than prima facie *evidence,* and evidence only of an *exclusive* right, which right (as in the case of patents) means a right to *exclude others,* not a positive right to use. Cf. § 33(a) (15 U.S.C. § 1115(a)).[6] There is, therefore, no inconsistency between the Chain's above-named registrations and Applicant's right to use HOLIDAY INN in Myrtle Beach. The Chain *has* the right in Myrtle Beach *to exclude* Applicant from using its registered marks, reinforced by a court injunction against their use. Applicant, correspondingly, has no right to use them. There is, therefore, no reason to impose restrictions on the registrations because the Chain's right to exclude is, on this record, without exception.

The Chain further argues that "the involved registrations are valid and incontestable." "Incontestability" is provided for in § 15 (15 U.S.C. § 1065) of the Trademark Act. It says nothing about incontestability of *registrations,*[7] notwithstanding the popularity of the phrase. The

**6.** For the construction of the term "exclusive right" as it appeared in the patent law, R.S. 4884, prior to the Patent Act of 1952, see *Ethyl Gasoline Corp. v. United States,* 309 U.S. 436, 456, 60 S.Ct. 618, 625, 84 L.Ed. 852, 861 (1940); *United Shoe Machinery Corp. v. United States,* 258 U.S. 451, 463, 42 S.Ct. 363, 367, 66 L.Ed. 708, 719 (1922); and *Bloomer v. McQuewan,* 14 How. (55 U.S.) 539, 549, 14 L.Ed. 532, 548 (1852). The present patent law, of course, states exactly what the patent right is and always has been, "the right to exclude others from making, using, or selling the invention." 35 U.S.C. § 154. That the right *to use* a trademark or service mark is independent of the

Trademark Act is evident from a number of considerations. It is fundamental that ownership of a mark is acquired by use, not by registration. One must be the owner of a mark before it can be registered. The right to use is unaffected either by failure to register or expiration of a registration. Not even the right to exclude is obtained from registration of trademarks and service marks.

**7.** Some writers have similarly referred to *marks* becoming incontestable, whatever that means. We also note that the statute contains no provision to that effect.

only thing which ever becomes incontestable, whatever may be the significance of "incontestability," is "the right of the registrant to use," and even that is subject to numerous provisos.[8] Assuming that the Chain's right to use its marks as registered is incontestable under § 15, that section contains an exception which covers Applicant's situation, as recognized by the Fourth Circuit courts. It must be remembered that Applicant is the prior user. The exception, which is immediately antecedent to the statement of incontestable right to use, reads:

> * * * except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the publication under this Act of such registered mark * * *.

Under the law of South Carolina, Applicant acquired by use of HOLIDAY INN a right therein which would be infringed by the Chain's marks if the Chain used them in Myrtle Beach, and that right was acquired long before publication of the Chain's marks under the Act. Therefore, the Chain has no statutory incontestable rights under its registrations as against Applicant in Myrtle Beach.

The decision of the board imposing restrictions on the Chain's registrations is, therefore, *reversed.*

### Reasons of Appeal

 Applicant's Point IIB is that "Registrant [the Chain] is barred from contesting the Board's decision limiting its registration, by failing to propound 'Reasons for Appeal' here." The Chain filed its notice of

appeal with the Commissioner of Patents and Trademarks on August 7, 1975. January 2, 1975, the Trademark Act was amended by Public Law 93–600, 88 Stat. 1955, which so changed § 21(a)(2), (3), and (4) (15 U.S.C. § 1071) as to eliminate the requirement for reasons of appeal in trademark cases. Applicant's point is without foundation.[9]

### Conclusion

The decision of the TTAB is in all respects *reversed* and the case is *remanded* for further proceedings consistent herewith.

*REVERSED AND REMANDED.*

---

**8.** See 1 J. McCarthy, *Trademarks and Unfair Competition* 741 (1973), where he says:

> The "incontestability" of a registration is purely relative, for even an incontestable registration is always subject to the seven defenses enumerated in § 33(b) of the Act. Additionally, even an incontestable mark is always subject to certain enumerated grounds for cancellation of the registration. [Citing in footnotes § 14(c) and (e).]

Even this text falls into the error of speaking of incontestable marks and registrations.

**9.** The abolition of reasons of appeal was first proposed by members of this court in 1963 when legislation was introduced. Over eleven years later the Congress finally passed a bill pertaining to trademark appeals. Nothing has yet passed concerning patent appeals, in which the law still requires reasons of appeal.