This Opinion is a
Precedent of the TTAB

Mailed: September 26, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Shael Norris*

*v.*

*PAVE: Promoting Awareness, Victim Empowerment*
_____

Opposition No. 91234909
_____

Michael H. Golland, Esq.
   for Shael Norris.

Mark C. Comtois of Duane Morris LLP,
   for PAVE: Promoting Awareness, Victim Empowerment.
_____

Before Wellington, Ritchie and Dunn,
   Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

PAVE: Promoting Awareness, Victim Empowerment ("Applicant"), an Illinois corporation, filed an application seeking registration on the Principal Register of the mark **SafeBAE** in standard characters for "Providing emotional counseling and emotional support services for victims of sexual violence" in International Class 45.[1]

---

[1] Application Serial No. 87005072.

The application was filed on April 18, 2016, under Section 1(b) of the Trademark Act ("the Act"), 15 U.S.C. § 1051(b), based on Applicant's claim of a bona fide intention to use the mark in commerce.

Shael Norris ("Opposer"), an individual, opposes registration of the applied-for mark on the ground that the application is void because Applicant was not the owner of the mark at the time the application was filed.[2] In particular, Opposer alleges that her "use of the mark predates [Applicant's] use of the mark" and that she "created the SafeBae concept and is the rightful owner of the proprietary interest to this name."[3] Opposer also alleges that "[a]s of April 18, 2016, the date of filing of [the] Application, [Applicant] had not used the subject mark in commerce" and that "[t]his fact cannot be disputed in that [the Application] … cites 1(b) (Intent to Use) as the basis for the registration."[4] The nature and statutory basis of the ground for opposition is discussed in more depth below.

Applicant's Answer denies the salient allegations of the Notice of Opposition.[5]

---

[2] 1 TTABVUE (Notice of Opposition). Opposer also listed fraud and likelihood of confusion on the ESTTA coversheet as grounds for opposition. Although the content of the ESTTA cover sheet is read in conjunction with an attached notice of opposition as an integral component thereof, *see PPG Indus. Inc. v. Guardian Indus. Corp.*, 73 USPQ2d 1926, 1928 (TTAB 2005), the mere mention of a ground on the ESTTA cover sheet generally is insufficient to constitute a claim. *Embarcadero Techs. Inc. v. RStudio Inc.*, 105 USPQ2d 1825, 1827 n.2 (TTAB 2013) (internal citation omitted). More importantly, Opposer did not pursue either claim in her trial brief. Therefore, neither of these claims is before us. *See Alcatraz Media, Inc. v. Chesapeake Marine Tour Inc.*, 107 USPQ2d 1750, 1753 (TTAB 2013) (petitioner's pleaded descriptiveness and geographical descriptiveness claims not argued in brief deemed waived), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014).

[3] *Id.*, Notice of Opposition ¶¶ 1 and 15.

[4] *Id.*, at ¶ 9.

[5] 6 TTABVUE (Answer).

The parties have briefed this opposition proceeding.[6]

## I.    Evidentiary Objections and the Record

Opposer filed her own testimonial declaration, with accompanying exhibits,[7] as well as the testimonial declarations of Alison Sweeney and Kaitlin McKenna, who worked with Opposer.[8]

Applicant filed the testimonial declarations, with accompanying exhibits, of: Angela Rose, Applicant's founder;[9] Josh Rubin, President of Applicant's Board of Directors;[10] Meghana Kulkarni, Applicant's former Outreach Director;[11] and Jill Dominguez, a former volunteer and current contractor for Applicant.[12]

In an appendix attached to her trial brief, Opposer raises objections to Applicant's "testimony and documentary evidence."[13] Many assert that the testimony lacks probative value or is based on assumptions of facts not in evidence. Opposer also objects to certain testimony as constituting inadmissible hearsay or as not being based on personal knowledge.

With respect to the objections based on the lack of probative value or hearsay, the Board is able to weigh all evidence and testimony appropriately, and we see no need

---

[6] 39, 46 TTABVUE (Opposer's main and rebuttal briefs); 42 TTABVUE (Applicant's brief).

[7] 10 TTABVUE.

[8] 11 and 12 TTABVUE, respectively.

[9] 13 TTABVUE.

[10] 14 TTABVUE.

[11] 15 TTABVUE.

[12] 16 TTABVUE.

[13] 17 TTABVUE 11-13.

to exclude it outright. "Ultimately, the Board is capable of weighing the relevance and strength or weakness of the objected-to testimony and evidence, including any inherent limitations, and this precludes the need to strike the testimony and evidence." *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1737 (TTAB 2014). For example, we agree with Opposer that Ms. Dominguez' averment that she began working for Applicant in 2016 indicates she lacks the requisite personal knowledge to testify regarding Applicant's efforts prior to this time.[14] Accordingly, with regard to Applicant's submission of the "Time Line of Events" prepared by Ms. Dominguez,[15] we disregard all statements that precede that date and are not based on Ms. Dominguez' personal knowledge.[16] Thus, we decline to decide each and every individual objection and base our factual findings herein only on evidence that is admissible, properly of record and probative.

Finally, Opposer inserted screenshots and a hypertext link within the text of her reply brief.[17] To the extent these materials were not previously and properly introduced into the record, they have not been considered. TRADEMARK TRIAL AND

---

[14] 16 TTABVUE 2 (Dominguez dec. ¶¶ 2-3); 17 TTABVUE 13 (Opposer's objection).

[15] 16 TTABVUE 4 (Attached to Dominguez dec.); also submitted within exhibits to Rose declaration.

[16] Although Ms. Dominguez states that her statements are "based on my personal knowledge" (16 TTABVUE 2), she does not explain any basis for knowledge of events or documents that preceded her employment. *Cf. Nat'l Pork Bd. and Nat'l Pork Producers Council v. Supreme Lobster and Seafood Co.*, 96 USPQ2d 1479, 1483 n.6 (TTAB 2010) (finding employee was sufficiently competent and trustworthy to testify on the issues before tenure despite not having first-hand knowledge of matters because employee learned the history by reviewing underlying documents and speaking to others with knowledge, and other party did not present evidence that testimony was untruthful or unreliable) (citing *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 94 USPQ2d 1315 (Fed. Cir. 2010)).

[17] 20 TTABVUE 4-7.

APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 704.05(b) (2019) and cases cited therein (Exhibits and other evidentiary materials attached to a party's brief on the case can be given no consideration unless they were properly made of record during the time for taking testimony. Evidence which was timely filed during the parties' trial periods need not and should not be resubmitted with a party's brief.)

## II.   Background

Applicant was founded in 2002 by Angela Rose and is a non-profit organization to "create education and action surrounding the issues of sexual violence."[18]

Opposer was employed between 1999-2017 by V-Day Organization, a "global activist movement to end violence against women and girls."[19]

In July 2015, Opposer was introduced to Applicant's principal, Ms. Rose, by email.[20] In the email, the sender describes Opposer as a person "starting to look at projects specific to high schools regarding campus violence" and Applicant as having "an amazing speakers bureau with high school[] survivors" and mentions the possibility "for partnerships moving forward."[21] There is no evidence showing that, prior to this time, either party was using the applied-for mark SafeBAE in connection with any services.[22]

---

[18] 13 TTABVUE 2.

[19] 10 TTABVUE 3.

[20] 13 TTABVUE 3 (Rose dec. ¶ 6); 10 TTABVUE 19 (Norris Ex. D).

[21] 10 TTABVUE 19.

[22] Both parties assert that, before meeting each other, they were involved in activities or prepared materials that would later be used for the sexual violence educational campaign known as "SafeBae." However, there is no evidence showing that the "SafeBae" mark was used in connection with these activities or materials. For example, Opposer testified that she

In July-August 2015, the parties began collaborating on a project regarding sexual violence prevention for high school students. The exact nature of the parties' working relationship at that time is now in dispute and the factual circumstances are murky. Applicant's principal, Ms. Rose, has testified that "on or about August 2015," she "hired" Opposer to work for Applicant "as a volunteer."[23] Opposer disputes this and asserts that "at no time was [Opposer] an employee of [Applicant]."[24]

In support of her claim that she owns the applied-for mark, Opposer points out that on September 15, 2015, she arranged for the purchase (registration) of the domain name www.safebae.org, and that in October 2015 she entered into an agreement with a web designer to develop this website.[25] Opposer also testified that she worked with an individual, Ms. McKenna, in August 2015 to help "create the SafeBae logo, conduct focus groups and design the SafeBae website and social media accounts."[26]

Applicant acknowledges Opposer's work in conjunction with the SafeBae educational campaign. However, Applicant asserts that Opposer was acting in a volunteer capacity on behalf of Applicant and points out that costs and expenses incurred by Opposer in connection with the SafeBae educational campaign were

---

prepared a grant request in early 2015 "to support SafeBae" and that she was involved in discussions with other individuals regarding a "SafeBae" program (10 TTABVUE 3-4); however, the SafeBae mark is not mentioned in the grant request nor is there any evidence showing Opposer's use of the SafeBae mark prior to meeting Applicant.

[23] 13 TTABVUE 3 (Rose dec. ¶ 9).

[24] 17 TTABVUE 6.

[25] 10 TTABVUE (Norris dec. ¶¶ 15, 19).

[26] *Id.* ¶ 13.

reimbursed by Applicant. Specifically, Applicant's principal, Ms. Rose, testified that Opposer was "responsible for registering the domain name 'SAFEBAE.ORG' for [Applicant]" and that "[a]lthough [Opposer] initially paid the domain name registration fee, and initially paid for website hosting services for SAFEBAE.ORG, [Applicant] submitted a reimbursement form to PAVE for these costs."[27] Rose testified that "[o]n 8 January 2016, [Applicant] received an expense reimbursement form from [Opposer] on [Applicant's] letterhead for the amount of $4117.43 for expenses for the SafeBAE program including creating an e-mail account, domain name registration, and website creation and hosting" and that Opposer was "reimbursed in full by [Applicant]."[28] A second such reimbursement request and payment was made in March-April of 2016.[29] Applicant submitted corresponding documents evidencing these reimbursement requests and payments.[30]

Applicant's principal, Ms. Rose, testified that "[a]t no time was it contemplated" that Applicant "would merely act as a financial conduit" for Opposer, and that Applicant "was involved in all aspects of planning and operating" Applicant's SafeBAE Campaign."[31] Rose further claims that "[t]he name SafeBAE was adopted by" Applicant for its "high school program directed to sexual violence awareness and

---

[27] 13 TTABVUE 3 (Rose dec. ¶¶ 26-27).

[28] *Id.*, ¶¶ 28-29.

[29] *Id.*, ¶¶ 32-34.

[30] *Id.*, Exs. H-N.

[31] *Id.*, ¶ 17.

prevention as a result of a collaborative effort between a number of people including myself, Shael Norris, and Meghana Kulkarni, an employee of [Applicant]."[32]

The record contains evidence of use of the SAFEBAE mark for a summit on the topic of sexual violence — the "SafeBAE National Summit: Solutions for Preventing and Responding to Sexual Violence in High Schools" — that was held on December 12, 2015, at Washington-Lee High School in Arlington, Virginia.[33] An advertisement for the summit is depicted below:



---

[32] *Id.*, ¶ 19.

[33] 13 TTABVUE 117 (Rose dec. Ex. W).

As described in this advertisement, "SafeBAE" is a "national campaign" that is "powered by PAVE: Promoting Awareness, Victim Empowerment."[34] Opposer's name does not appear on the advertisement and there is no mention of any collaboration with any other organization or individual. However, Opposer has testified that she "conceived and developed" this summit.[35]

On April 18, 2016, Applicant filed the involved application based on an allegation of a bona fide intent to use the mark in commerce.

## III.  Standing

A threshold issue in each inter partes case is the plaintiff's standing to challenge registration. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *John W. Carson Found. v. Toilets.com Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010).

In this case, Opposer has established her standing through her testimony, and related exhibits, regarding her work with Applicant involving the use of the applied-for mark SafeBAE. Although Applicant disputes the significance of Opposer's role in the creation of the mark and rejects Opposer's allegation of ownership of the applied-for mark, Applicant acknowledges Opposer's work and involvement in the program. At the very least, Opposer's endeavors and the existence of the relationship between

---

[34] *Id.*

[35] Norris dec. ¶ 23. The conception or development of a summit identified by the applied-for mark does not establish trademark rights. *Cf. Hamilton Burr Publ'g Co. v. E. W. Comm'ns, Inc.,* 216 USPQ 802, 805 (TTAB 1982) (quoting *Blue Bell, Inc. v. Farah Mfg. Co.,* 185 USPQ 1, 4 (5th Cir. 1975)).

the parties establish that she possesses a real interest in the proceeding beyond that of a mere intermeddler, and has a reasonable basis for her belief of damage resulting from registration of the subject mark. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999); *Ipco Corp. v. Blessings Corp.*, 5 USPQ2d 1974 (TTAB 1988).

## IV. Lack of Ownership Claim Is Unavailable Against an Intent-to-Use Application

The asserted ground for opposition and posture of this opposition proceeding, as presented by the parties, is that of an "ownership" case, i.e., a situation where the parties once collaborated in using a mark but are now disputing the rights to the same underlying mark for the same services. *See, e.g.*, *Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 123 USPQ2d 1024 (Fed. Cir. 2017); *Wonderbread 5 v. Gilles*, 115 USPQ2d 1296, 1302 (TTAB 2015) ("both parties are relying upon activities the two conducted in concert with one another, each in an attempt to establish prior rights in a mark over the other, the dispute centers on ownership of the mark."). Indeed, in this case, the parties seem to agree that the only issue is which party owns the mark. To wit, Opposer asserts that "the question before this tribunal comes down to whether [Opposer or Applicant] has priority ownership of the Mark at issue."[36] Applicant, likewise, asserts that "[t]he sole issue in dispute in this opposition is ownership of the SAFEBAE service mark."[37]

---

[36] 17 TTABVUE 10.

[37] 18 TTABVUE 13.

In spite of the manner in which this opposition has been tried and argued, a claim that an applicant is not the rightful "owner" of the applied-for mark is not available when the application is not based on use of the mark in commerce. That is, the statutory basis for a non-use claim is under Section 1(a) and, as such, the claim lies solely for a use-based application. To clarify, Section 1(a) of the Act provides that "[t]he owner of a trademark used in commerce may request registration of its trademark." In the standard declaration for a use-based application, the applicant avers: "The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered. The mark is in use in commerce on or in connection with the goods/services in the application." Thus, should the filer of an application under this section be determined not to be the "owner" of the applied-for mark, the application is void *ab initio*. *See* Trademark Rule 2.71(d), 37 C.F.R. § 2.71(d) ("An application filed in the name of an entity that did not own the mark as of the filing date of the application is void."); *Huang v. Tzu Wei Chen Food Co Ltd.*, 849 F.2d 1458, 7 USPQ2d 1335 (Fed. Cir. 1988) (affirming Board holding that application filed by individual two days after transfer to newly-formed corporation is void). *See also, Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 189 USPQ 630, 635 n.6 (CCPA 1976) ("It is fundamental that ownership of a mark is acquired by use, not by registration."); *accord Jean Patou, Inc. v. Theon, Inc.*, 9 F.3d 971, 29 USPQ2d 1771, 1774 (Fed. Cir. 1993) ("Trademark ownership results only from use, not from registration.") (*cited in Wonderbread 5*, 115 USPQ2d).

In contrast and applicable to this proceeding, under Section 1(b) of the Act, an applicant "who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark." There is no statutory requirement that the filer of an intent-to-use application be the owner of the mark at the time of filing of the intent-to-use application. In the standard declaration for an intent-to-use application, the applicant avers that: "The signatory believes that the applicant is entitled to use the mark in commerce. The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application." Thus there is no ground for opposition based on the filer not being the owner of the mark that is the subject of an intent-to-use application -- at least not until the filing basis of the application has been amended to use in commerce (either by way of an amendment to allege use or by filing a statement of use). As a consequence, there is no statutory basis for Opposer's allegations and asserted non-ownership claim.

However, "[b]ecause a bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under Section 1(b), the lack of such intent is a basis on which an opposer may challenge an applicant's mark." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 114 USPQ2d 1892, 1898 (Fed. Cir. 2015). By analogy to non-ownership claims, where the application is based on intent to use under Section 1(b) of the Trademark Act, and two parties are claiming superior rights based on shared circumstances, the question is which entity or individual had the bona fide intent. *Am. Forests v. Sanders*, 54 USPQ2d 1860, 1864 (TTAB 1999)

(holding an intent-to-use application filed by an individual void, where the entity that had a bona fide intention to use the mark in commerce on the application filing date was a partnership composed of the individual applicant and her husband), *aff'd mem.*, 232 F.3d 907 (Fed. Cir. 2000). In other words, an opposer may assert that an applicant does not have a right to file the intent-to-use application based on a lack of intent to use the mark in commerce in connection with the applied-for goods or services.

In sum, because the involved application is based on Applicant's claim of a bona fide intent to use the SafeBAE mark in commerce, and not based on use in commerce, Opposer's lack of ownership claim is not appropriate and we give no further consideration to Opposer's lack of ownership claim.

We note further that Opposer did not specifically allege that Applicant lacked a bona fide intent to use the involved mark when it filed the involved application. Moreover, the parties do not argue this issue in their respective briefs and the claim has not been tried by implied consent. While there is some evidence on the point suggesting that Applicant had a bona fide intent to use the mark in commerce at the time it filed the application, we decline to address a ground for refusal not raised by the challenger or tried by consent because we cannot be confident that the parties have provided us with a full record upon which to make the required findings. *See, e.g., Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1755 (Fed. Cir. 1998) (where an opposer failed to plead a ground for refusal, that unpleaded was "therefore was not before the Board"); *Carano v. Viña Concha y Toro S.A.*, 67 USPQ2d 1149, 1150 n.3 (TTAB 2003); *Levi Strauss & Co. v. R. Josephs Sportswear Inc.*, 28 USPQ2d

1464, 1471 n.11 (TTAB 1993) ("opposer never pleaded priority of use and likelihood of confusion as a ground for opposition, and we are therefore constrained to decide the case only on the ground which was pleaded and tried").

**Decision**: The opposition is dismissed.